# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

In re
SCOTT MERRITT,

      Debtor.

Bk. No. 16-20691-dob
Hon. Daniel S. Opperman
Chapter 7

_____/

LENDING HOME FUNDING CORPORATION,
its assignees and/or successors in interest,

      Secured Creditor,

SCOTT MERRITT;
DANIEL HIMMELSPACH, Trustee,

      Respondents.

_____/

## **MOTION FOR ORDER GRANTING RELIEF FROM AUTOMATIC STAY**

Lending Home Funding Corporation, its assignees and/or successors in interest ("Secured Creditor" herein) alleges as follows:

1.     That on or about April 15, 2016, the above named Debtor filed his Chapter 7 Petition in Bankruptcy with this Court.

2.     Secured Creditor is the current payee of promissory note dated February 27, 2015 in the principal amount of $105,000.00 ("Note" herein) secured by a mortgage of same date ("Mortgage" herein) upon property generally described as **1378 West Midland Road, Auburn, MI 48611** and legally described as set forth in the attached Mortgage. (Copies are attached hereto as **Exhibit "A"** and made a part hereof, "Property" herein).

3.     Secured Creditor is informed and believes, and, based upon such information and belief, alleges that title to the subject Property is currently vested in the name of Debtor. There are no other parties with a known discoverable interest in the property.

4.     Secured Creditor will seek leave of Court to specify any further encumbrances against the subject Property at the time of trial/hearing.

5.      As of May 18, 2016, the outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $105,000.00 |
| Unpaid, Accrued Interest | $6,446.40 |
| Escrow Advance | $0.00 |
| Corporate Advance | $ 0.00 |
| Default Interest | $3,267.04 |
| <u>Less</u>: Partial Payments | ($0.00) |
| Minimum Outstanding Obligations | $114,713.44 |

6.      This loan matured as of February 27, 2016 and therefore the full amount is owing.

7.      In addition to the other amounts due to Secured Creditor reflected herein, as of the date hereof, in connection with seeking the relief requested in the Motion, Secured Creditor has also incurred $926.00 in legal fees and costs. Secured Creditor reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8.      Secured Creditor has elected to initiate foreclosure proceedings on the Property with respect to the subject Mortgage; however, Secured Creditor is precluded from proceeding to publish the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

9.      This Secured Creditor is informed and believes, and based upon such information and belief, alleges that absent this Court's Order allowing this Secured Creditor to proceed with the pending foreclosure, Secured Creditor's security will be significantly jeopardized and/or destroyed. Secured Creditor has incurred to date attorneys' fees of approximately $926.00.

10.     Based upon the foregoing, Secured Creditor alleges that there appears to be no equity with respect to said Property, that Secured Creditor is not adequately protected, that the subject Property is not necessary to effectuate Debtor's rehabilitation, and that it would be unfair and inequitable to delay

this Secured Creditor in the foreclosure of Secured Creditor's interest. Secured Creditor urges that this Court issue an Order herein permitting this Secured Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

11.     The commercially reasonable value of the subject Property is approximately $40,200.00, as evidenced by the Debtor's Schedules A, attached hereto as **Exhibit "B"** and made a part hereof.

12.     That on June 20, 2016, Creditor's counsel sought concurrence from the Debtor's counsel for the relief sought in this Motion.

13.     This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Section 362(d).

WHEREFORE, Secured Creditor prays judgment as follows:

1.     For an Order granting relief from the Automatic Stay, permitting this Secured Creditor to move ahead with foreclosure proceedings under Secured Creditor's Mortgage and to sell the subject Property under the terms of said Mortgage, including necessary action to obtain possession of the Property.

2.     For such Order regarding adequate protection of Secured Creditor's interest as this Court deems proper.

3.     For attorneys' fees and costs of suit incurred herein.

4.     For an Order waiving the 14-day stay described by Bankruptcy Rule 4001(a)(3).

5.     For an Order that, in addition to foreclosure, permits activity necessary to obtain possession of said collateral; therefore, Lending Home Funding Corporation is permitted to engage in loss mitigation activity, including short payoff, short sale and the obtaining of a deed-in-lieu of foreclosure including authorization to negotiate inferior liens. Lending Home Funding Corporation is further permitted to send information regarding these loss mitigation options directly to the debtor.

6.     For such other relief as this Court deems appropriate.

Dated: 6/20/16                    By: /s/ Thomas Beadle
                                        THOMAS BEADLE, ESQUIRE (P39203)
                                   Retained Counsel for Creditor,
                                   Lending Home Funding Corporation, its assignees and/or
                                   successors in interest
                                   Beadle Smith, P.L.C.
                                   445 South Livernois Road, Suite 305
                                   Rochester Hills, Michigan 48307
                                   (248) 650-6094
                                   (248) 650-6095 fax
                                   tbeadle@bbssplc.com
                                   L.084-128

# PROMISSORY NOTE
# SECURED BY MORTGAGE

*(Term Loan, Interest Only Payments, Balloon Payment due* ___02-27-2016___ *)*

Amount: 105,000.00          Loan No. Redacted

APN: 09-140-022-100-160-00          Date: 02-27-2015

San Francisco, CA

**FOR VALUE RECEIVED**, at the times hereinafter stated:
Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company

herein called **"Borrower"**, promise(s) to pay to **LendingHome Funding Corporation**, a Delaware corporation ("**Lender**") or order at the address specified below, or at such place or places as Lender may designate in writing from time to time, the sum of:

___One Hundred And Five Thousand and 00/100 U.S. Dollars___

( ___$105,000.00___) or so much thereof as may be disbursed by Lender, (the **"Principal Amount"**) with interest on each advance of principal (each an **"Advance"**) at the interest rate set forth below from the date of such Advance (the **"Disbursement Date"**) until ___02-27-2016___ (the **"Maturity Date"**).

**SECURITY:** This Promissory Note (the **"Note"**) is secured by a FIRST priority Mortgage (which Mortgage also included an Assignment of Rents and Fixture Filing) dated of even date herewith (the **"Mortgage"**) on property known as:

___1378 West Midland Road, Auburn, MI 48611___,

Parcel No, ___09-140-022-100-160-00___ (the **"Property"**). The term **"Loan Documents"** shall have the same meaning as that term in the Mortgage.

1.    **Advances.** Provided that no event of default has occurred hereunder, Lender will make Advances for the purposes specified not to exceed the maximum (aggregate) sum of ___$105,000.00___ (the **"Loan"**).

   1.1   Initial Advance. The initial disbursement of funds (**"Initial Advance"**) shall be ___$37,500.00___ to be used in connection with the purchase or refinance of the Property.

   1.2   Construction Advance. Any additional advance of funds (**"Construction Advance"**) made contemporaneously with the Initial Advance shall be for the purpose of funding construction and/or rehabilitation of the Property. The amount of the Construction Advance, if any, is provided for in the attached **Schedule A**.

   1.3   Authorization. Lender may conclusively presume that all requests, statements, information, certifications, and representations, whether written or oral, submitted or made by Borrower or any of its agents to the Lender in connection with this Note are true and correct, and the Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by the Lender, in disbursing or releasing the Loan proceeds and taking or refraining from taking any other action in connection with the Loan.

**2.    Interest Rate and Payment of Principal and Interest.**

   2.1   Interest Rate.

      2.1.1   Applicable Rates. Subject to the provisions of this Section 2 below, the Initial Advance will bear interest at an annual rate of ___13.000%___ The Construction Advance, if any, will bear interest at the annual rate specified in Schedule A.

      2.1.2   360-day Year. Notwithstanding anything to the contrary contained in this Note, interest at the rates provided for in this Note shall be computed on the basis of a three hundred sixty (360) day year for the

Redacted

# EXHIBIT A

SAM Borrower's Initials

actual number of days during which the principal balance of this Note is outstanding. Borrower acknowledges and agrees that the calculation of interest on the basis described in the immediately preceding sentence may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

2.1.3 Default Rate of Interest. From and after the earlier of either (a) the occurrence of an Event of Default; or (b) the maturity of this Note (whether the stated Maturity Date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest) subject to the provisions of Section 2.2.9 below, additional interest on the unpaid principal balance of this Note (under both the Initial Advance and the Construction Advance) shall immediately accrue at a rate equal to **ten percent (10%)** per annum. Such interest shall be in addition to the interest specified in Sections 2.1.1 and 2.1.2 above.

2.1.4 Usury Protection. Notwithstanding anything contained in this Note to the contrary, if collection from Borrower of interest at the foregoing interest rate would be contrary to applicable laws, then the interest rate in effect on any day shall be the highest interest rate which may be collected from Borrower under applicable laws on such day. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower.

2.1.5 Interest Commencement. Interest on the Initial Advance shall commence on the date Loan proceeds are initially deposited into an escrow for the benefit of Borrower and regardless of the date they are subsequently disbursed therefrom, provided that the period for which interest accrues prior to release of funds from escrow does not exceed **one (1)** day. Interest on any Construction Advance shall commence on the date the funds are set aside for the benefit of Borrower notwithstanding the date released to, or for, Borrower.

## 2.2 Payments.

2.2.1 Periodic Payment Date. Unless sooner accelerated, payments due under the Note until the Maturity Date shall be made on the first (1st) calendar day of each month (each a **"Payment Date"**) commencing on   04-01-2015   .

2.2.2 Maturity Date. Unless sooner accelerated, the entire unpaid principal balance of this Note plus all accrued and unpaid interest thereon plus all other obligations owed under this Note shall be due and payable on the Maturity Date.

2.2.3 Interest Payments. From the Disbursement Date of the Initial Advance and any Construction Advance, payments shall be made on each Payment Date of all accrued interest due and owing as of such Payment Date, which is currently calculated to be in the sum of $\$1,137.50$. If Borrower prepays part of the outstanding principal balance of this Note, or if the outstanding principal balance of this Note is reduced by application of any Construction Advance surplus (as provided in Schedule A of this Note, if applicable) or for any other reason, Borrower's periodic Interest Payments shall be reduced accordingly.

2.2.4 **Balloon Payment. BORROWER ACKNOWLEDGES AND AGREES THAT (1) THE LOAN EVIDENCED BY THIS NOTE IS NOT AN AMORTIZING LOAN; AND (2) THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE SHALL BE DUE AND PAYABLE ON THE MATURITY DATE OF THIS NOTE.**

2.2.5 Prepayment. Borrower may prepay at any time all or part of the outstanding principal balance of this Note without a prepayment fee. If the loan calls for principal payments in installments, all prepayments of principal shall be applied on the most remote principal installment or installments then unpaid.

2.2.6 Payment Application. All payments under this Note shall be credited first to charges, fees, costs, and expenses payable by Borrower under this Note or in connection with the obligations evidenced by

$\underline{S\,A\,M}$ Borrower's Initials

this Note, second to accrued interest then due, thereafter to unpaid principal. If any payment of interest is not made when due, at the option of Lender, such interest payment shall bear interest at the same rate as principal from and after the due date of the interest payment. The receipt of any check or other item of payment (a "Payment Item") by Lender, at its option, shall not be considered a payment until such Payment Item is honored when presented for payment at the drawee bank or institution, and Lender, at its option, may delay the credit of such payment until such Payment Item is so honored. Upon the occurrence of any Event of Default, the Lender, at its option, shall have the right to apply all payments made under this Note to principal, interest, and other charges, fees, costs and expenses payable by Borrower under this Note or in connection with the Loan in such order and amounts as the Lender may determine in its sole and absolute discretion.

2.2.7    Initial Loan Fee.  Concurrently with or prior to the execution of this Note, Borrower shall pay to the Lender a fee ("Loan Fee").  The entire Loan Fee shall be deemed to be fully earned by the Lender as of the first Disbursement Date, and no part of the Loan Fee shall be refundable to Borrower, whether or not the principal balance of the Loan is prepaid prior to the Maturity Date subject to the provisions of Exhibit B (if applicable), attached hereto and incorporated herein.

2.2.8    Late Charge.  Borrower shall immediately pay a late charge equal to the greater of: (i) Thirty-five Dollars (\$35.00) or (ii) ten percent (10%) of such installment of interest and/or principal to Lender to compensate Lender for administrative costs and expenses incurred in connection with such late payment if: (x) the outstanding obligations on this Note are not paid in full within seven (7) days of the Maturity Date, or (y) any installment of interest and/or principal under this Note is not paid within ten (10) days after the date on which it is due.  Borrower agrees that the actual damages suffered by Lender because of any late installment payment are extremely difficult and impracticable to ascertain, and the late charge described in this Section represents a reasonable attempt to fix such damages under the circumstances existing at the time this Note is executed.  Lender's acceptance of any late charge shall not constitute a waiver of any of the terms of this Note and shall not affect Lender's right to enforce any of its rights and remedies against any Person liable for payment of this Note.

2.2.9    Extension Fee.  If Borrower should not pay all obligations outstanding on this Note upon the scheduled Maturity Date, Borrower hereby authorizes Lender, at its sole discretion, to grant one (1) extension of the term of this Note by thirty (30) calendar days beyond such scheduled Maturity Date.

(a)    If such extension is granted, (i) Interest will continue to accrue as specified in this Note; (ii) the payments specified in this Note shall be due and owing; (iii) Borrower shall continue to make the payments of Interest (and Principal if applicable) on the Periodic Payment Date as provided herein until the extended Maturity Date; and (iv) for purposes of Section 2.1.3 the Maturity Date will be deemed to mean the 30th day following the originally scheduled Maturity Date.

(b)    As consideration for extending the maturity, Borrower, hereby authorizes a charge equal to one percent (1.00%) of the original principal loan balance.  Such payment shall be due and owing at the time of the extension.

2.2.10    Loan Servicer.  Payments shall be made to Lender at the address of the Loan Servicer, which address is provided in Section 7 of this Note, or to another address if hereafter so designated by Lender in writing.  Any and all costs and expenses associated with such loan servicing shall be borne by Borrower, which costs and expenses shall be an additional payment and obligation of Borrower under this Note.

3.    **Default and Remedies.**

3.1    **Events of Default.**  Lender, at its option, may declare Borrower to be in default under this Agreement and the other Loan Documents upon the occurrence of any or all of the following events (the declaration of such a default by the Lender shall constitute an "Event of Default"):

3.1.1    Payment or Performance.  Borrower fails to pay any payment or perform any obligation due under this Note within ten (10) days of the date due, or to pay the entirety of the amount due hereunder

3

$\underline{S\,A\,M}$ Borrower's Initials

within **ten (10)** days of the Maturity Date (whether the due date of any such payment is the date expressly set forth herein or is determined by extension, acceleration, or otherwise).

3.1.2    Event of Default.  Any Event of Default as defined in the Mortgage or in any Guaranty.

3.2    **Remedies.**  Upon the Lender's election to declare Borrower to be in default under the Loan Documents pursuant to Section 3.1 above, Borrower shall be deemed to be in default under the Note, and the Lender shall have the right to do any or all of the following without notice or demand (except as required by law):

3.2.1    Discontinue Release of Funds. Discontinue any Advances or withhold the release of any Advances under the Note.

3.2.2    Acceleration.  Declare the entire unpaid balance of principal and all accrued and unpaid interest, costs and expenses then due and payable under this Note to be immediately due and payable, even though the time of maturity as expressed herein shall not have arrived.

3.2.3    Declare Default. Declare a default under any or all of Borrower's obligations under this Note or under the Mortgage and to proceed in accordance with Lender's rights and remedies under those agreements.

3.2.4    Foreclose. Foreclose upon any security pledged under any applicable pledge or security agreement and any other collateral securing Borrower's obligations, pursuant to any right or remedy permitted by law, including as set forth under the Mortgage.

3.2.5    Exercise Other Rights. Exercise any other right or remedy contained in any of Borrower's obligations, including as set forth under the Mortgage.

3.2.6    Assign. Collect or assign to any other person, individual or entity (**"Person"**) the right to collect any and all rents, profits or proceeds from the property, collection and assignment of which shall not be impaired by any act of Borrower.

3.2.7    Application. Immediately apply as against any and all amounts due and owing under this Note the balance of any cash or other security then on deposit with the Lender or Loan Servicer held as additional collateral.

3.2.8    Guaranty. Make demand on any Guaranty.

3.2.9    Legal Remedies. Exercise any other right or remedy available at law or in equity.

4.    **Borrower's Representations and Warranties.**  As a material inducement to the Lender's extension of credit to Borrower in connection with the Loan, Borrower warrants and represents to the Lender as follows:

4.1    Authority to Execute Note.  Borrower has the full power and authority to execute, deliver and perform its obligations under this Note, and the execution, delivery and performance of this Note has been duly authorized by all requisite action on the part of Borrower. If Borrower is a corporation, partnership, limited liability company, trust or other entity, the Person or Persons signing the Loan Documents on behalf of Borrower are duly authorized to execute the Note and all other documents necessary to consummate the Loan on behalf of Borrower.

4.2    Valid Obligations.  The Note is a legal, valid and binding obligation of Borrower, enforceable in accordance with its terms (except as enforcement may be limited by equitable principles and by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to creditors' rights generally).

$\underline{SAM}$ Borrower's Initials

4

4.3    No Consents Required. No consent of any other Person and no consent, approval, authorization or other action by or filing with any governmental authority not previously obtained by Borrower is required in connection with the execution, delivery and performance of this Note by Borrower.

4.4    Borrower's Name. Borrower has set forth above its full and correct name, and Borrower does not use any other names or tradenames, except for the tradenames disclosed to Lender in writing.

4.5    Commercial Loan. Borrower represents and warrants that the proceeds of this loan will be used by Borrower only for business purposes and that Borrower will be holding the Property as an investment and does not intend to, and will not, occupy or reside on the Property so long as the Loan remains outstanding.

4.6    Borrower's Warranties. Borrower's warranties and representations set forth in this Section 4 shall be true and correct and deemed made at the time of execution of this Note and as of the date of each Advance, shall survive the closing of the Loan, and shall remain true and correct as of the date on which such warranties and representations are given.

5.    Waivers. Borrower and all sureties, Guarantors, endorsers and other Persons liable for payment of this Note (a) waive presentment, demand for payment, protest, notice of demand, dishonor, protest and nonpayment, and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) waive the benefits of any applicable law, regulation, or procedure which provides, in substance, that where cross demands for money exist between parties at any point in time when neither demand is barred by the applicable statute of limitations, and an action is thereafter commenced by one such party, the other party may assert the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the claim would at the time of filing the response be barred by the applicable statute of limitations; (d) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by the Lender and Borrower without notice to and without in any way affecting the liability of any Person for payment of this Note; and (e) consent to any forbearance by the Lender and to the release, addition, and substitution of any Person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any Person for payment of this Note.

6.    Attorney Fees and Collection Costs. Borrower agrees to pay all costs, expenses, charges, consultants' fees, expert witness fees, trustee's fees, foreclosure costs, costs of litigation or alternative dispute resolution proceeding (including, without limitation, those incurred preliminary to the institution of any legal action or judicial or non-judicial proceeding, or in order to quantify or obtain recovery of the amount of such recoverable attorney's fees, costs, or expenses, or in connection with any appeal arising from any such action or proceeding), discovery costs and expenses, and attorney fees ("Collection Costs") paid or incurred by Lender, or adjudged by a court, arbitrator or other tribunal in connection with: (a) the interpretation, collection or enforcement of this Note (including, without limitation, costs incurred in seeking collection of rents owing from any tenant of the Property), whether or not suit is filed; (b) representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note or the Mortgage; (c) actions taken to protect the lien of the Mortgagee or Lender's interests in the Property as Lender; (d) actions taken to enforce any provision of this Note or the Mortgage; and (e) in defense of any claims brought by Borrower arising from the rights and obligations of the parties under the Loan Documents. Borrower shall be obligated to pay all such Collection Costs, which shall be additional obligations of Borrower hereunder payable on demand, and shall bear interest at the Default Rate from the date of such demand until paid in full.

7.    Notice. Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; (c) by a nationally recognized overnight courier service,

5

SAM Borrower's Initials

Redacted

marked for next day business delivery; or (d) by electronic transmission. All notices sl
party to whom such notice is to be given at the following address:

Lender Address: LendingHome Funding Corporation, c/o Loan Servicing, 201 Post St, Suite 1200, SF, CA 94108
Lender Email: servicing@lendinghome.com

Borrower Address: 3961 Holland Drive, Midland MI
Borrower Email: merrittassociates@gmail.com

or to such other address as a party may designate by written notice to the other. All notices shall be deemed
effective on the earliest of (a) actual receipt; (b) rejection of delivery, if delivery is attempted by personal service,
mail or messenger; (c) if sent by certified mail, the third day on which regular United States mail delivery
service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on
which such service makes next-business-day deliveries after the day of sending; (d) if sent via email, upon
electronic delivery unless thereafter there is electronic notice of failed electronic delivery.

8.    **Applicable Law; Jurisdiction; Venue.** The Loan Documents shall be governed by and construed in
accordance with the laws of the state in which the Property is located without giving effect to the conflicts of laws
principles thereof. Borrower agrees that the courts of the State of California and Federal District Courts located in
San Francisco County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or
indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or
interpretation of this Note and all of the other Loan Documents or any of the transactions contemplated by or related
to any or all of the Loan Documents (except for foreclosure proceedings, which shall proceed in the state in which
the Property is located and according to the laws of that state), regardless of whether or not any claim, counterclaim
or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional
misconduct, breach of contract or fiduciary duty, or violation of any Governmental Requirements. Borrower
irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the
manner provided for the giving of notices in this Note. Borrower waives all objections to such jurisdiction and
venue, including all objections that are based upon inconvenience or the nature of the forum.

9.    **Time Is of the Essence.** Time is of the essence with respect to all obligations of Borrower under this
Note.

10.   **Multiple Interests of Lender.** In the event that multiple parties are named as Lender or Beneficiary,
or multiple parties hold beneficial interests in this Note or the Mortgage, a vote of 51% or greater of the
beneficial interests will be considered the majority necessary for any decision or action by Lender or
Beneficiary under the terms of this Note and the Mortgage.

11.   **Entire Agreement.** This Note, the Mortgage (and any and all riders), the Guaranty and any other Loan
Document contain the entire agreement concerning the subject matter of the Loan Documents and supersede all
prior and contemporaneous negotiations, agreements, statements, understandings, terms, conditions, representations
and warranties, whether oral or written, by and among the Lender, Borrower and Guarantors concerning the Loan
which is the subject matter of the Loan Documents.

12.   **No Modifications or Amendments; No Waiver.** Except as specified herein, no modification,
amendment, change or waiver of any provision of this Note ("Change or Waiver") shall be valid, binding or
effective unless it is in writing and signed by the party against whom enforcement of such Change or Waiver is
sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other
provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

13.   **Lender's Acceptance of Payment, Extensions of Time or Forbearance Not a Waiver.** The
acceptance by Lender or Loan Servicer of any payment, partial or otherwise, made hereunder, whether paid on
or after the time that such payment becomes due as herein set forth, will not establish a custom or constitute a
waiver of any of Lender's rights to enforce prompt payment or to enforce any of Lender's rights or any of the

Redacted

$\underline{\mathcal{S}\mathcal{H}\mathcal{M}}$ Borrower's Initials

6

obligations of Borrower or any guarantor or endorser set forth in this Note or the Mortgage, or otherwise provided at law or in equity. Any extension of time granted or tolerated by Lender with respect to any payment due hereunder or other forbearance with respect to the performance of any other term, provision, covenant or agreement of this Note or the Mortgage, or the taking or releasing of security or collateral for the payment of this Note, or in exercising or failing to exercise any right or power under this Note or the Mortgage, shall not in any way release or affect the liability of Borrower, or any guarantor or endorser hereof, or any other party obligated to make any payment or render any performance hereunder. If Lender delays in exercising or fails to exercise any of its rights under this Note or the Mortgage, that delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition hereunder or thereunder. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

14. **Remedies Cumulative.** All of Lender's rights and remedies under this Note shall be cumulative. Any failure of Lender to exercise any right or remedy under this Note or under any of the loan documents executed by Borrower shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time, thereafter.

15. **Severability.** If any provision of the Loan Documents shall be held by any court of competent jurisdiction to be unlawful, voidable, void, or unenforceable for any reason, such provision shall be deemed to be severable from and shall in no way affect the validity or enforceability of the remaining provisions of the Loan Documents.

16. **Interpretation.** Whenever the context of this Note reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. The headings to sections of this Note are for convenient reference only and shall not be used in interpreting this Note. For purposes of this Note, (a) the term "including" shall be deemed to mean "including without limitation"; (b) the term "document" shall be deemed to include all written contracts, commitments, agreements, and instruments; and (c) the term "discretion," when applied to any determination, consent, or approval right by the Lender, shall be deemed to mean the Lender's sole but good faith business judgment.

17. **Assignment.** This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations, without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, and/or designate any other Person as the holder hereof, all without notice to or the consent of Borrower.

18. **Successors and Assigns.** Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, and permitted successors and assigns.

19. **Cooperation.** Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, or assign the Mortgage, the Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by this Mortgage to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Mortgage, the Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell the Loan or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transactions and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transactions (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors

$\underline{SAM}$ Borrower's Initials

7

may require; provided, however, that Borrower shall not be required to modify any documents evidencing or securing the Loan that would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other material terms or covenants of the Loan. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, participants, or investors may reasonably request in connection with a Secondary Market Transactions. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

20.     **Loss, Theft, Destruction or Mutilation of Note.** In the event of the loss, theft or destruction of this Note, upon Borrower's receipt of a reasonably satisfactory indemnification agreement executed in favor of Borrower by the party who held this Note immediately prior to its loss, theft or destruction, or in the event of the mutilation of this Note upon Lender's surrender to Borrower of the mutilated Note, Borrower shall execute and deliver to such party or Lender, as the case may be, a new promissory note in form and content identical to this Note in lieu of the lost, stolen, destroyed or mutilated Note.

21.     **Joint and Several Liability.**

        21.1    Joint and Several. Each Person or party comprising Borrower shall be jointly and severally liable for the obligations of Borrower hereunder. If Borrower consists of more than one Person, the occurrence of any Default or Event of Default with respect to any one or more of such Persons shall constitute a Default or Event of Default, as applicable, and (in the case of an Event of Default) entitle the Lender to exercise its rights and remedies as provided above.

        21.2    Married Individuals. Each Borrower who is a married person agrees that the Lender shall have the right to recourse against his or her community property and separate property, for any or all obligations to the fullest extent permitted by law.

22.     **Waiver of Right to Jury Trial.** Borrower irrevocably waives all rights to a jury trial in any action, suit, proceeding or counterclaim of any kind directly or indirectly arising out of or in any way relating to this Note or any of the other Loan Documents, any or all of the real and personal property collateral securing this Note. The jury trial waiver contained in this section is intended to apply, to the fullest extent permitted by law, to any and all disputes and controversies that arise out of or in any way related to any or all of the matters described in the immediately preceding sentence, including without limitation contract claims, tort claims, and all other common law and statutory claims of any kind. This Note may be filed with any court of competent jurisdiction as borrower's written consent to borrower's waiver of a jury trial.

23.     **State Specific Provisions.** State specific provisions are outlined on Exhibit A (if applicable), attached hereto and incorporated herein.

IN WITNESS WHEREOF, Borrower has executed this Promissory Note Secured by Mortgage effective as of the date first written above.

**BORROWER:**

Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company

By: Scott A. Merritt, Managing Member

Borrower's Initials

8

# Schedule A
## (Construction Loan)

This schedule is attached to and made a part of the Promissory Note from:

___Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company___
("Borrower") to LendingHome Funding Corporation ("Lender") (Loan No. Redacted _____), and provides for the disbursement and release of the Construction Advance in accordance with the terms of this schedule and the Construction Loan Rider to the Mortgage.

### 1.    Construction Advance and Release of Funds.

1.1     Construction Advance.  Up to _____$67,500.00_____ to be used in connection with the construction to take place on the Property or for improvements thereon.

1.2     Construction Advance Termination Date.  Unless Lender agrees otherwise in writing, Lender will not release any funds of the Construction Advance for construction or improvements on the Property completed sixty (60) days after the Initial Advance.

### 2.    Interest Rate.

2.1     The Construction Advance will bear interest at the annual rate of ___13.000%___ per cent.

### 3.    Surplus.

3.1     Credit Of Remaining Construction Advance Funds.  If Lender has not released to, or for, Borrower all of the funds identified in Section 1.1 above by the Construction Advance Termination Date or when notified in writing by the Borrower that Borrower wishes to forgo the release of any remaining portion of the Construction Advance, any unreleased portion of the Construction Advance will within fifteen (15) days be applied to reduce the outstanding principal balance owed by Borrower to Lender.

$\mathcal{SAM}$Borrower's Initials

Redacted

1

Redacted

## PROMISSORY NOTE

## EXHIBIT "A"

## MICHIGAN SPECIFIC PROVISIONS

**Section 23.1** **Inconsistencies.** In the event of any inconsistencies between the terms and conditions of this Section 23 and the other provisions of this Note, the terms and conditions of this Section 23 shall control and be binding.

**Section 23.2** **Applicable Law; Jurisdiction; Venue.** Section 8 of the Note is deleted in its entirety and replaced with the following:

"This Note and the Loan shall be governed by and construed in accordance with the laws of the State of California without giving effect to the conflicts of laws principles thereof, as to all Loan terms, excluding the exercise of remedies against the Property or other collateral, in which case the laws of the state in which recordation of security interests/mortgage interests in property shall control. Borrower agrees that the courts of the State of California and Federal District Courts located in San Francisco County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Agreement and all of the other Loan Documents or any of the transactions contemplated by or related to any or all of the Loan Documents (except for foreclosure proceedings, which shall proceed in the state in which the Property is located and according to the laws of that state), regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any Governmental Requirements. Borrower irrevocably consents to the personal jurisdiction of such courts, to such venue, and to the service of process in the manner provided for the giving of notices in this Agreement. Borrower waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum."

**Section 23.3** **Married Individuals.** Section 21.2 of the Note is deleted in its entirety and replaced with the following:

"Each Borrower who is a married person agrees that the Lender shall have the right to recourse against his or her jointly owned property and separate property, including any property owned by them as tenants by the entirety, for any or all obligations to the fullest extent permitted by law."

**BORROWER:**

Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company

_____  Date 2/8/15

By: Scott A. Merritt, Managing Member

Redacted

# GUARANTY

This GUARANTY is made by and between <u>Scott Merritt, an unmarried person</u> (herein called ("**Guarantor**") and **LendingHome Funding Corporation**, a Delaware corporation ("**Lender**").

## RECITALS

A. <u>Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company</u> "(Borrower"), shall obtain concurrently herewith a loan in the original principal face amount of <u>$105,000.00</u> (the "**Loan**") from the Lender (Loan No. Redacted ). The Loan will be evidenced by that certain promissory note dated as of the date hereof (the "**Note**") executed by Borrower in favor of the Lender. The Loan will be secured by that certain Mortgage (which also includes an Assignment of Rents and Fixture Filing) dated as of the date hereof (the "**Mortgage**") executed by Borrower, as Mortgagor, in favor of the Lender, as Mortgagee. The Note, Mortgage (together with any riders thereto) and all other documents executed by Borrower and delivered to the Lender at the Lender's request in connection with the Loan and all extensions, renewals, modifications, and replacements of any or all of such documents, are referred to collectively as the "**Loan Documents**".

B.     As one of the conditions to closing and funding the Loan, Lender requires that Guarantor execute and deliver this Guaranty to the Lender. Guarantor desires to guaranty Borrower's indebtedness and obligations to the Lender in connection with the Loan on the terms and conditions of this Guaranty.

## GUARANTY

THEREFORE, for good, adequate and valuable consideration, the receipt of which is hereby acknowledged by Guarantor and based upon the foregoing Recitals, Guarantor agrees as follows:

1.     **Guaranty of Payment and Performance.** For valuable consideration and to induce Lender to grant credit or other financial accommodations to Borrower, Guarantor, as primary obligor and not merely as surety, absolutely and unconditionally guarantees and promises to pay Lender, on demand, any and all Indebtedness of Borrower to Lender, and also absolutely and unconditionally guarantees the due performance by Borrower of all its obligations under the loan documents relating to the Loan(s).

2.     **Indebtedness.** The word "Indebtedness" is used herein in its most comprehensive sense and includes without limitation: (i) the indebtedness arising from or in connection with the Loan or the Note or the Mortgage or any other Loan Document, (ii) all advances made thereunder, (iii) any increase of the principal amount of the Loan and all interest thereon and (iv) any and all extensions, renewals, modifications and replacements thereof, all of which shall be included within the term "Loan".

3.     **Continuing Guaranty.** This Guaranty, as to each Guarantor, is and shall remain effective without reaffirmation until the indebtedness has been paid in full. This Guaranty shall not be impaired by any modification, supplement, extension or amendment of any contract or agreement to which the parties thereto may hereafter agree, or by any increase of the principal amount modification, release or other alteration of any of the indebtedness hereby guaranteed or of any security therefore, including without limitation, pursuant to a bankruptcy or reorganization proceeding in connection with Borrower, or by any agreement or arrangements whatsoever with Borrower or anyone else. If the indebtedness is a revolving credit, Guarantor acknowledges and agrees that the amount of the indebtedness may at any one time be zero dollars, which shall not constitute a termination of this Guaranty. As to the Loan, this Guaranty shall terminate upon final payment in full of all amounts owed under the Loan subject to reinstatement or revival as set forth in Section 9 below.

4.     **Joint and Several Obligations.** The obligations hereunder are joint and several as to each and every Guarantor, and are independent of Borrower's obligations. A separate action or actions may be brought against Guarantor, or any one of them, whether action is brought against Borrower or whether Borrower is joined in any such action or actions. Each Guarantor agrees that any releases which may be given by Lender to any one or more of the Guarantor shall not release him, her or it from this Guaranty.

16-20691-dob    Doc 41    Filed 06/20/16    Entered 06/20/16 11:04:03    Page 14 of 65

5.     **Authorization.** Guarantor authorizes Lender, without notice or demand and without affecting its liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including any increase or decrease in the rate of interest thereon; (b) increase the principal amount of the Loan (c) take and hold security for the payment of this Guaranty or the indebtedness guaranteed, and exchange, enforce, waive and release any such security; (d) apply such security and direct the order or manner of sale thereof as Lender in its sole discretion may determine; (e) accept additional guarantors or discharge (in whole or in part) any guarantors; (f) assign, without notice, this Guaranty in whole or in part and/or Lender's rights hereunder to anyone at any time; and (g) apply or refund, in its discretion, any payments made, or collections received, on any of the indebtedness.

6.     **Financial Condition.** Guarantor assumes the responsibility to keep informed of the financial status of Borrower and of any circumstance which may affect Guarantor's obligations or Borrower's, and Guarantor recognizes and agrees that Lender is not obligated to keep Guarantor informed of any such circumstances. Where Borrower is a corporation, partnership or limited liability company, it is not necessary for Lender to inquire into the powers of Borrower of the officers, directors, partners, manager or agents acting or purporting to act on its behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder. Guarantor agrees that by executing this Guaranty it assumes all risks of bankruptcy or reorganization cases or proceedings in connection with Borrower.

7.     **Collateral.** Guarantor's performance of any and all obligations of Guarantor to Lender no matter how or when arising, whether absolute or contingent, whether due or to become due, and whether under this Guaranty or otherwise are secured by all monies or deposits of any Guarantor at any time in Lender's possession. Lender shall have the right to enforce such security interests and the right to offset against such security without notice or demand.

8.     **Claims in Bankruptcy.** Guarantor shall file all claims against Borrower in any bankruptcy, reorganization or liquidation proceeding and shall assign to Lender such claims and all of its rights related thereto. If Guarantor fails to do so at Lender's request, Lender is authorized, and is hereby irrevocably granted Borrower's power of attorney, to file claims on Guarantor's behalf and to file an assignment of such claims with the bankruptcy court or liquidating entity. Guarantor hereby assigns to Lender all of Guarantor's rights to any payments on any such claims.

9.     **Revival.** If Lender is required to reimburse to Borrower or any person any amount previously paid or recovered on account of the indebtedness as a preference, fraudulent transfer or because of any bankruptcy proceeding or similar proceeding, Guarantor's obligations shall be reinstated and revived.

10.     **Waiver of Jury Trial.** GUARANTOR IRREVOCABLY WAIVES ALL RIGHTS TO A JURY TRIAL IN ANY ACTION, SUIT, OR PROCEEDING OF ANY KIND DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN ANY WAY RELATING TO THE INDEBTEDNESS OR THIS GUARANTY, ANY OR ALL OF THE REAL AND PERSONAL PROPERTY COLLATERAL SECURING THE INDEBTEDNESS OR THIS GUARANTY, OR ANY OF THE TRANSACTIONS WHICH ARE CONTEMPLATED BY THE FINANCING DOCUMENTS OR THIS GUARANTY. THIS WAIVER IS INTENDED TO APPLY, TO THE FULLEST EXTENT PERMITTED BY LAW, TO ANY AND ALL DISPUTES AND CONTROVERSIES THAT ARISE OUT OF OR IN ANY WAY RELATE TO ANY OR ALL OF THE MATTERS DESCRIBED IN THE PRECEDING SENTENCE, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS OF ANY KIND. THIS GUARANTY MAY BE FILED WITH ANY COURT OF COMPETENT JURISDICTION AS GUARANTOR'S WRITTEN CONSENT TO WAIVER OF A JURY TRIAL.

11.     **State Specific Provisions.** State specific provisions are outlined on Exhibit A (if applicable), attached hereto and incorporated herein.

12.     **Miscellaneous.**

12.1     Guarantor agrees to pay attorneys' fees and all other costs and expenses which may be incurred by Lender in the enforcement or interpretation of Lender's rights under this Guaranty in any state, federal

16-20691-dob     Doc 41     Filed 06/20/16     Entered 06/20/16 11:04:03     Page 15 of 65

or bankruptcy mediation, arbitration or litigation proceeding.                    Redacted

**12.2**    Any married person who signs this Guaranty hereby expressly agrees that (i) recourse may be had against his/her community property and separate property, for all his/her obligations under this Guaranty and (ii) such person will have his/her spouse execute a Spousal Consent form.

**12.3**    This Guaranty contains the entire guaranty agreement between Guarantor and Lender, and supersedes all prior agreements and negotiations whether oral or written pertaining to the subject matter of this Guaranty. No modification or amendment of this Guaranty shall be effective unless it is in writing and executed by Guarantor and Lender.

**12.4**    The death of any Guarantor shall not terminate this Guaranty as to such deceased or as to any other Guarantor. This Guaranty shall be binding upon the heirs, executors, administrators, successors and assigns of each Guarantor and shall inure to the benefit of Lender's successors and assigns. Guarantor may not assign its rights or obligations hereunder.

**12.5**    In all cases where there is more than one Borrower named herein, or when this Guaranty is executed by more than one Guarantor, the "Borrower" and the word "Guarantor," respectively, shall mean all and any one or more of them.

**12.6**    Any notice required to be provided in connection with this Guaranty shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) electronic delivery to Borrower addressed to Borrower at the e-mail address set forth in this Guaranty (c) by first-class certified United States mail, postage prepaid, return receipt requested; or (d) by a nationally recognized overnight courier service, marked for next day business delivery. All notices shall be addressed to the party to whom such notice is to be given at the following address:

| LENDER: | LendingHome Funding Corporation |
|---|---|
| LENDER ADDRESS: | c/o Loan Servicing, 201 Post Street, Suite 1200, San Francisco, CA 94108 |
| LENDER EMAIL: | servicing@lendinghome.com |

| GUARANTOR NAME: Scott Merritt, an unmarried person |
|---|
| GUARANTOR ADDRESS: 3961 Holland Drive, Midland, MI 48642, USA |
| GUARANTOR EMAIL: merrittassociates@gmail.com |

**12.7**    All rights and powers of Lender under this Guaranty and under any other agreement between Guarantor and Lender shall be cumulative and in addition to all right, power and remedies given to Lender at law. Guarantor has read the Loan Documents and acknowledges and agrees that stated therein are certain obligations of Guarantor and agrees that Guarantor's failure to comply with such obligations will constitute an event of default thereunder.

**12.8**    Guarantor represents and warrants to Lender that this Guaranty is an irrevocable, absolute, present and unconditional guaranty of payment and not of collectability. If Guarantor is an entity, Guarantor has duly authorized by all necessary action the execution, delivery and performance of this Guaranty and neither its execution and delivery of this Guaranty nor its consummation of the transactions contemplated by this Guaranty nor its compliance with any of the terms and provisions of this Guaranty does or will require any approval not yet received of its stockholders or equity holders or any approval or consent of any trustee or holders of any of its obligations and upon their execution and delivery in accordance with the provisions hereof will constitute legal, valid and binding agreements and obligations of Guarantor or the party which executes the same, enforceable in accordance with their respective terms.

Redacted

3                              Borrower's Initials

**12.9**    Headings in this Guaranty are for convenience of reference and shall not be used to interpret or define the provisions of this Guaranty.

**12.10**    Each Guarantor declares that he, she or it understands the contents of this Guaranty and has had an opportunity to consult with an attorney regarding the form and content of this Guaranty.

**12.11**    Guarantor shall provide to Lender, the following financial information:

(i)    a complete and accurate copy of its tax return (including K-1 and all other schedules if applicable) or application for filing an extension of such tax return, within **fifteen (15)** days of filing but in no event shall the tax return be delivered to Lender later than **October 15th** of each year. All tax returns shall be prepared by an independent certified public accountant acceptable to Lender.

(ii)    personal financial statements from the previous quarter, recent bank and brokerage statements to confirm assets, most recent w-2 and paystub such other information as Lender may request in such detail and at such times as is satisfactory to Lender.

**IN WITNESS WHEREOF**, this Guarantee is executed by the undersigned Guarantor.

**GUARANTOR:** Scott Merritt

Scott Merritt    Date 2/27/16

# GUARANTY

# EXHIBIT "A"

# MICHIGAN SPECIFIC PROVISIONS

**Section 11.1** **Inconsistencies.** In the event of any inconsistencies between the terms and conditions of this Section 11 and the other provisions of this Guaranty, the terms and conditions of this Section 11 shall control and be binding.

**Section 11.2** **Waivers.**

(i) Notwithstanding any foreclosure of the lien of any mortgage or security agreement with respect to any or all of any real or personal property secured thereby, whether by the exercise of the power of sale contained therein, by an action for judicial foreclosure or by an acceptance of a deed in lieu of foreclosure, Guarantor shall remain bound under this Guaranty.

(ii) Guarantor waives any right to require Lender to: (a) proceed against Borrower; (b) proceed against or exhaust any security held from any person or marshalling of assets or liens; (c) proceed against any other Guarantor; or (d) pursue any other remedy available to Lender. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower.

(iii) Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default or demand, notices of acceptance of and reliance on this Guaranty and of the existence, creation, or incurring of new or additional indebtedness, notices of renewal, extension or modification of the indebtedness, notice of any and all favorable and unfavorable information, whether financial or other, about Borrower, heretofore, now, or hereafter learned or acquired by Lender and all other notices to which Guarantor or any of them might otherwise be entitled, and the right to a jury trial in any action hereunder or arising out of Lender's transactions with Borrower.

(iv) Guarantor hereby waives any and all defenses and claims based on principles of suretyship and/or guaranty. Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof.

(v) Guarantor acknowledges that the waivers provided herein are made with Guarantor's full knowledge of the significance and consequence of such waivers, and that Lender is relying on such waivers. Guarantor obligations shall not be affected by: (a) termination, dissolution, consolidation or merger of Borrower with or into any other entity; (b) the voluntary or involuntary liquidation, dissolution or sale or other disposition of all or substantially all of Borrower's assets; or (c) the receivership, reorganization, bankruptcy assignment for the benefit of creditors or similar proceeding affecting Borrower.

**Section 11.3** **Subrogation; Subordination.** So long as any indebtedness of Borrower to Lender remains outstanding, Guarantor waives, and relinquishes any and all rights of reimbursement, contribution, and subrogation, which Guarantor may now or hereafter have against Borrower. Guarantor further agrees that, to the extent the waiver of its rights of subrogation as set forth herein is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of subrogation Guarantor may have against Borrower or against any collateral or security shall be junior and subordinate to any right Lender may have against Borrower and to all right, title and interest Lender may have in any collateral or security. Lender may, in accordance with applicable laws, use, sell or dispose of any item of collateral or security as it sees fit without regard to any subrogation right Guarantor may have, and upon disposition or sale, any right of subrogation Guarantor may have shall terminate. Any and all present and future debts and obligations of Borrower to each Guarantor are hereby postponed in favor of

1

BORROWER'S INITIALS

and subordinated to the full payment and performance of all indebtedness of Borrower to Lender. Any amounts received on such indebtedness or obligations owed to Guarantor shall be held by Guarantor as trustee and paid over to Lender without affecting Guarantor's liability under this Guaranty.

**Section 11.4    Jointly Owned Property.** Section 12.2 of the Guaranty is deleted in its entirety and replaced by the following:

"Any married person who signs this Guaranty hereby expressly agrees that recourse may be had against his/her jointly owned property and separate property, including property owned as tenants by the entirety, for all his/her obligations under this Guaranty."

**Section 11.5    Applicable Law.** All acts and transactions hereunder and the rights and obligations of the parties hereto shall be governed construed and interpreted in accordance with the laws of the State of Michigan without giving effect to the conflicts of laws principles thereof.

**GUARANTOR:** Scott Merritt

Scott Merritt          3/3/16
                       Date



03/04/2015 11:01:38 AM
RECORDED
BRANDON KRAUSE
REGISTER OF DEEDS, BAY COUNTY MICHIGAN

RECEIPT# 6092, STATION 7
$107.00 MORTGAGE



LIBER 3077    PAGE 163

# MORTGAGE

THIS IS A FUTURE ADVANCE MORTGAGE. THE MAXIMUM PRINCIPAL AMOUNT, EXCLUDING PROTECTIVE ADVANCES, THAT MAY BE SECURED BY THE MORTGAGE IS $ 105000.0        .

> LENDER:   LENDINGHOME FUNDING CORPORATION
>
> BORROWER: Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company
>
> LOAN No.:REDACTED

**PREPARED BY**
**AND WHEN RECORDED MAIL TO:**

LendingHome Funding Corporation
201 Post Street, Suite 1200
San Francisco, California 94108
Attn: Post Closing Department

REDACTED                                    1

2015 MAR -4  A 9:41



# MORTGAGE

THIS MORTGAGE (the "**Mortgage**") is made on <u>02-27-2015</u> by <u>Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company</u> ("**Borrower**"), whose address is <u>3961 Holland Drive, Midland MI</u> in favor of **LendingHome Funding Corporation**, a Delaware corporation, ("**Lender**"), whose address is 201 Post Street, Suite 1200, San Francisco, California 94108.

## WITNESSETH

WHEREAS, Lender has agreed to provide Borrower with a Loan (the "**Loan**") as evidenced by that certain Promissory Note dated of even date herewith in the amount of $<u>105,000.00</u> by and between Lender and Borrower (the "**Note**"); and

WHEREAS, Lender is making the Loan in reliance on this Mortgage, and it is a condition precedent to the making of the Loan by Lender that Borrower execute and deliver this Mortgage.

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to Borrower, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby covenants and agrees with Lender, as follows:

## GRANTING CLAUSES

BORROWER IRREVOCABLY MORTGAGES AND WARRANTS TO LENDER, ITS SUCCESSORS AND ASSIGNS, all of Borrower's present and future estate, right, title and interest in and to the following described property (collectively, the "**Property**"):

(A)  The real property located in the County of <u>Bay</u>, State of <u>Michigan</u>, commonly known and addressed as <u>1378 West Midland Road, Auburn, MI 48611</u> and more particularly described in <u>Exhibit A</u> attached to this Mortgage and incorporated herein by reference (the "**Land**"); and

(B)  All Buildings, Fixtures, Easements, Rents and Profits, Development Rights, Water Rights, and Mineral Rights (as those terms are defined in Article 1 of this Mortgage).

THIS MORTGAGE SECURES THE FOLLOWING INDEBTEDNESS AND OBLIGATIONS (collectively, the "**Obligations**") in such order of priority as Lender may from time to time elect:

(1)  Payment and performance of Borrower's indebtedness and obligations under the Note and this Mortgage and all extensions, renewals, modifications, and replacements thereof, including all future advances pursuant to the Note and Construction Rider (if applicable) ("**Future Advances**") to the same extent as if such Future Advances were made on the date of execution of this Mortgage; and

(2)  Payment and performance of any and all other indebtedness which may hereafter be owing by Borrower to Lender under the Note, this Mortgage or other Loan Documents, however incurred, including but not limited to the attorneys' fees, court costs, witness fees, expert witness fees, collection costs, and costs and expenses paid by Lender in the preservation and enforcement of its rights and remedies under this Mortgage or other Loan Documents.

REDACTED

REDACTED

2



## ARTICLE I

### DEFINITIONS

For purposes of this Mortgage, the following terms shall have the following definitions:

**1.1** **Books and Records.** "Books and Records" means all books and records relating to the design, construction, improvement, development, use, ownership, operation, maintenance, repair, lease, taxation or marketing of the Property whether kept in hard copy or electronic form.

**1.2** **Buildings.** "Buildings" means all buildings, structures and other improvements now existing or hereafter located on the Land.

**1.3** **Condemnation Claims.** "Condemnation Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise out of any condemnation of the Property or other taking of the Property for public or quasi-public use by eminent domain or to the transfer of the Property in lieu of condemnation or any such taking.

**1.4** **Condemnation Proceeds.** "Condemnation Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Condemnation Claims.

**1.5** **Covenants and Restrictions.** "Covenants and Restrictions" means all covenants, conditions, restrictions, equitable servitudes, and all other similar matters now or hereafter affecting the Property, including any condominium, planned unit development, or cooperative apartment declaration of covenants, conditions and restrictions, by-laws, articles, rules, and regulations to which Borrower or the Property is subject or bound.

**1.6** **Development Rights.** "Development Rights" means all existing and future development rights, development credits, air rights, and options of any kind relating to the Property.

**1.7** **Easements.** "Easements" means all existing and future easements, rights of way, licenses, and similar rights relating or appurtenant to the Property and all existing and future rights in or to streets, roads, sidewalks, alleys, strips and gores adjoining or used in connection with the Property.

**1.8** **Event of Default.** "Event of Default" means any of the events described in Article 3 of this Mortgage.

**1.9** **Fixtures.** "Fixtures" means all fixtures, machinery, equipment, building materials, appliances, landscaping, systems, built-in furniture, plumbing, electrical, coverings and other commonly recognized fixtures now or hereafter located in, on, attached or affixed to, or used in connection with the Land or the Buildings, including, but not limited to, all HVAC and utility systems; security and access control equipment; water heaters, showers, bathtubs, tanks, pumps, toilets, sinks, pipes, and other plumbing fixtures and equipment; stoves, ranges, refrigerators, dishwashers, and disposals; laundry equipment; engines, motors, generators, boilers, furnaces, and incinerators; wall, window, and floor coverings, including screens, shades, drapes, and awnings; partitions, doors, windows, cabinets, bookcases, and hardware; chandeliers and other light fixtures; trees, plants and other landscaping; and all attachments, substitutions, accessories, accessions, replacements, improvements, and additions to any or all of the foregoing, all of which shall conclusively be deemed to be part of the Land and Buildings and conveyed by this Mortgage, whether or not affixed or attached to the Land or the Buildings.

**1.10** **General Partner.** "General Partner" means any Person who is acting as a general partner of a partnership.

REDACTED

REDACTED

3



**1.11** **Governmental Authorities.** "Governmental Authorities" means all governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities, judicial and non-judicial authorities, and public utilities having or exercising jurisdiction over Borrower or the Property.

**1.12** **Governmental Permits.** "Governmental Permits" means all permits, approvals, and authorizations now or hereafter issued by all Governmental Authorities for or in connection with the Property, including grading permits, foundation permits, building permits, tentative subdivision map approvals, zone changes, zone variances, conditional use permits, temporary certificates of occupancy, and final certificates of occupancy.

**1.13** **Governmental Requirements.** "Governmental Requirements' means all existing and future laws, ordinances, rules, regulations, orders, and requirements of all Governmental Authorities applicable to Borrower or the Property, including those respecting the design, construction, improvement, development, use, ownership, operation, maintenance, repair, or marketing of the Property.

**1.14** **Guaranty.** "Guaranty" means the guaranty agreement or agreements executed by any Guarantor.

**1.15** **Guarantor.** "Guarantor" means the Person or Persons, if any, now or hereafter guaranteeing payment of the Note or payment or performance of any or all of the other Obligations.

**1.16** **Impositions.** "Impositions" means all (a) Taxes; (b) Insurance Premiums; (c) gas, electricity, water, sewer, and other utility charges which are incurred for the benefit of the Property or which may become a lien against the Property; (d) assessments, charges, and fees imposed pursuant to any Covenants and Restrictions; (e) assessments, charges and fees payable with respect to any Easements, Water Rights or Development Rights; (f) principal, interest, and other amounts payable in connection with any Liens; and (g) such other taxes, charges, premiums, assessments and impositions relating to the Property, the payment of which Lender determines to be necessary to protect Lender's security for the Obligations.

**1.17** **Improvements.** "Improvements" means the Buildings and Fixtures, collectively.

**1.18** **Insurance Claims.** "Insurance Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise under any policy of insurance which Borrower maintains with respect to the Property or which Borrower is required to maintain under this Mortgage (collectively, the "Insurance Policies").

**1.19** **Insurance Proceeds.** "Insurance Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Insurance Claims.

**1.20** **Insurance Premiums.** "Insurance Premiums" means all premiums and other amounts payable in connection with procuring or maintaining the Insurance Policies.

**1.21** **Leases.** "Leases" means all existing and future rental agreements, leases, licenses, concessions, occupancy agreements, and other similar agreements affecting the Property, including all subleases at any level.

**1.22** **Liens.** "Liens" means all mortgages, deeds of trust, mechanics' liens, and other liens and encumbrances of every kind and nature, other than this Mortgage, now or hereafter affecting the Property.

**1.23** **Loan Documents.** "Loan Documents" means the Note, this Mortgage (together with any riders), the Guaranty, and all other documents executed by Borrower or any of the Guarantors and delivered to Lender at Lender's request in connection with the Loan, and all extensions, renewals, modifications, and replacements of such documents.

REDACTED

REDACTED

4



**1.24    Manager.** "Manager" means any Person who is acting as a manager of a limited liability company, including any member who is acting in such capacity.

**1.25    Mineral Rights.** "Mineral Rights" means all existing and future right, title, and interest in and to all minerals, oil, gas and other hydrocarbon substances in or on the Property.

**1.26    Person.** "Person" means any natural person or any entity, including any corporation, partnership, joint venture, limited liability company, trust, unincorporated organization, trustee, or Governmental Authority.

**1.27    Property Claims.** "Property Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature (other than the Insurance Claims and Condemnation Claims) which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise out of any or all of the following: (a) the Property; (b) any existing or future fact, matter, occurrence, or transaction relating to the Property; or (c) the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property.

**1.28    Property Proceeds.** "Property Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Property Claims.

**1.29    Rents and Profits.** "Rents and Profits" means all existing and future rents, royalties, issues, profits, proceeds, revenues, income and other benefits of the Property and all Leases, including all security deposits and prepaid rent.

**1.30    Taxes.** "Taxes" means (a) all taxes, bonds, levies and assessments now or hereafter affecting the Property, including all general and special real and personal property taxes, bonds, and assessments affecting the Property; (b) all other taxes, bonds, levies and assessments which now are or hereafter may become a lien on the Property, including all income, profits, franchise, withholding, and gross receipt taxes; (c) all other charges now or hereafter imposed on or assessed against the Property by any Governmental Authority or arising with respect to the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property; and (d) all taxes, bonds, levies, and assessments now or hereafter imposed by any Governmental Authorities on Lender by reason of their respective interests in the Loan Documents, excluding any franchise, estate, inheritance, income, or similar tax imposed on Lender.

**1.31    Tenants.** "Tenants" means all tenants and occupants of the Property under the Leases.

**1.32    Water rights.** "Water rights" means all existing and future water, water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant), and all water stock relating to the Property.

## ARTICLE 2

## COVENANTS OF BORROWER

**2.1    Performance of Secured Obligations.** Borrower shall pay and perform each and all of the Obligations in accordance with their respective terms.

**2.2    Preservation of the Property.** Borrower (a) shall maintain the Property in good condition and repair; (b) shall promptly repair and restore in a good and workmanlike manner any part of the Property which may be damaged or destroyed, whether or not any Insurance Proceeds are adequate to pay for the cost of such repair and restoration; (c) shall comply and cause the Property to comply with the provisions of all Insurance Policies; (d) shall comply and cause the Property to comply with all Governmental Requirements; (e) shall comply and cause the Property to comply with all Covenants and Restrictions; (f) shall maintain in effect all Governmental Permits; (g) shall not initiate, join in or consent to any change in the zoning, general plan, specific plan, or any other land use

REDACTED                    5                    REDACTED



classification affecting the Property or any Covenant or Restriction without the prior written consent of Lender; (h) shall not remove, demolish, improve, add to, or alter the Improvements (excluding non-structural alterations which preserve or increase the value of the Property, alterations required by Governmental Requirements and alterations approved by Lender) or change the character or use of the Property without the prior written consent of Lender; (i) shall not commit or permit any waste respecting the Property or impairment of the Property; (j) shall not abandon the Property; (k) shall not commit or permit any act upon the Property in violation of any Governmental Requirements; (l) shall promptly complete in a good and workmanlike manner, and shall pay, when due, all claims for labor performed and for materials furnished in connection with, Improvements which Borrower commences to construct on the Land; and (m) shall paint, cultivate, irrigate, fertilize, fumigate, prune, maintain and do all other acts, in a timely and proper manner, which from the character or use of the Property may be necessary or appropriate to preserve, protect and maintain the value of the Property.

2.3 **Hazardous Substances.** As used in this Section 2.3, (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2.4 **Insurance.** Borrower shall keep the Improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. Each of the Insurance Policies, including the amounts, form, coverage, deductibles, insurer and loss payable and cancellation provisions, shall be acceptable to Lender and the insurance company providing coverage must have rating of at least A-V or better in the latest edition of "Best's Insurance Guide," must be licensed to do business in the state in which the property is located, and must be licensed to transact the lines of insurance required in this transaction. Without limiting any of the terms of this Section, (i) each of the Insurance Policies shall provide that it may be canceled or modified only upon not less than thirty (30) days prior written notice to Lender; and (ii) the fire and extended coverage and other casualty insurance policies which Borrower is required to maintain under this Mortgage shall contain a mortgagee's loss payable endorsement acceptable to Lender naming Lender as loss payee and shall be written with liability in an amount equal to the lesser of (x) the original principal amount of the Loan plus any Future Advances and (y) the full replacement cost of the Improvements.

REDACTED

REDACTED

6



**2.5      Insurance Policies.**   Within thirty (30) days after closing of the Loan, Borrower shall deliver to Lender the originals of all Insurance Policies together with receipts for the full payment of all Insurance Premiums, and Lender shall have the right to hold such policies as long as any Obligations are outstanding. Lender shall not be liable or responsible for the suitability, adequacy, enforceability, validity, amount, form, or content of any Insurance Policies, the solvency of any insurer, or the collection of any Insurance Proceeds, and Borrower shall at all times have full responsibility for all of such matters. Not later than thirty (30) days prior to the expiration of each of the Insurance Policies, Borrower shall deliver to Lender a policy or policies renewing or extending the expiring Insurance Policies together with written evidence showing payment of the Insurance Premiums for such policies. If Borrower fails to deliver any of the Insurance Policies to Lender in accordance with this Mortgage, or if any of the Insurance Policies is canceled, Lender, without notice to or demand upon Borrower, shall have the right to obtain such insurance in such form, content and amount and with such insurer as Lender determines to be necessary or appropriate to protect its interest. Without limiting any other provision of this Mortgage, all premiums and other costs and expenses paid or incurred by Lender in connection with Lender's obtaining any Insurance Policies under this Section shall be payable by Borrower to Lender on Lender's demand. Lender shall not be obligated to obtain or maintain any policy of insurance with respect to the Property. All Insurance Policies relating to the Property and all unearned Insurance Premiums shall automatically inure to the benefit of and be deemed to be assigned to the grantee of the Property at any judicial or nonjudicial foreclosure sale under this Mortgage or by any deed in lieu of foreclosure under this Mortgage.

**2.6      Assignment of Insurance Claims and Proceeds.**   To secure the Obligations, Borrower grants, transfers, and assigns to Lender the Insurance Claims and Insurance Proceeds.

**2.7      Assignment of Condemnation Claims and Proceeds and Other Claims.**   To secure the Obligations, Borrower grants, transfers, and assigns to Lender the Condemnation Claims, Condemnation Proceeds, Property Claims, and Property Proceeds.

**2.8      Payment of Proceeds.**   Borrower shall cause all Insurance Proceeds, Condemnation Proceeds and Property Proceeds (collectively, the "Proceeds") to be paid or delivered directly to Lender. Lender shall at all times have the right but not the obligation (a) to demand, collect, accept, receive and give receipts for any and all of the Proceeds; and (b) to direct any Person to pay or deliver any or all of the Proceeds directly to Lender. Nothing contained in this Mortgage shall be deemed to obligate Lender to make any inquiry as to the sufficiency of any Proceeds received by Lender. If for any reason Borrower receives any Proceeds, Borrower shall immediately pay, assign, endorse or deliver such Proceeds to Lender in the original form in which received by Borrower and shall not commingle such Proceeds with any of Borrower's other funds or property.

**2.9      Prosecution and Settlement of Claims.**   Prior to the occurrence of any Event of Default, Borrower shall have a license to prosecute and enforce the Insurance Claims, Condemnation Claims, and Property Claims (collectively, the "Claims"). Lender shall at all times have the right to appear in, defend, and prosecute any action or proceeding arising out of or relating to any or all of the Claims if Lender determines that such action is necessary or appropriate to protect Lender's interest in connection with the Obligations. Upon the occurrence of an Event of Default, Borrower's license to prosecute and enforce the Claims shall be revoked upon, and to the extent provided in, notice by Lender to Borrower. Following such revocation, Lender, at its option, shall have the exclusive right to prosecute and enforce any or all of the Claims to the extent provided in Lender's notice of revocation and to compromise, adjust, settle or dismiss any or all of the Claims, whether or not Lender has taken possession of the Property. Without Lender's prior written consent, Borrower shall not (a) sell, transfer, pledge, hypothecate or otherwise dispose of or abandon any or all of the Claims; or (b) compromise, adjust, settle, or dismiss any or all of the Claims.

**2.10     Title Policy.**   Upon recordation of the Mortgage, Borrower shall cause the Lender to be furnished with an lender's policy of title insurance acceptable to Lender (a) written in an amount equal to the principal amount of the Loan; (b) issued by a title insurance company acceptable to the Lender; (c) showing title to the Property to be vested in a manner acceptable to the Lender; (d) containing a legal description of the Property satisfactory to the Lender; (e) insuring the Mortgage as a first lien on the Property, subject only to such exceptions as have been

REDACTED

7

REDACTED

16-20691-dob   Doc 41   Filed 06/20/16   Entered 06/20/16 11:04:03   Page 26 of 65



approved in writing by the Lender; (f) containing such title insurance endorsements as may be required by the Lender; and (g) otherwise acceptable to the Lender in form and substance, including the policy revision date. Within five (5) business days after the Lender's request from time to time, Borrower, at its expense, shall furnish the Lender with such additional title insurance endorsements as the Lender may require insuring the continuing first priority of the Mortgage. Borrower shall at all times cooperate with the Lender and its title insurer and provide the Lender's title insurer with such information as such title insurer may request or require in order to provide the Lender with the policies and endorsements described in this Section.

**2.11 Subordinate Mortgages.** If Lender consents to any other Lien on the Property ("Subordinate Mortgage"), or if the prohibition on Borrower's execution of any Subordinate Mortgage is unenforceable under applicable law, Borrower shall not execute any Subordinate Mortgage unless Borrower has first delivered to Lender a written agreement, acceptable to Lender, executed by the holder of the Subordinate Mortgage which provides that (a) the Subordinate Mortgage is and shall at all times remain unconditionally subject and subordinate to this Mortgage; (b) if any action or proceeding is commenced to foreclose the Subordinate Mortgage, no Tenant under any Lease shall be named as a defendant in such action or proceeding, nor shall such action or proceeding terminate any Lease, without Lender's prior written consent; (c) all Rents and Profits, whether collected directly by the holder of the Subordinate Mortgage or through a receiver, shall be applied first to the Obligations, second to the payment of the Impositions, and thereafter to payment of maintenance and operating costs relating to the Property; and (d) the holder of the Subordinate Mortgage shall give written notice to Lender not later than ten (10) days prior to commencing any judicial or nonjudicial action or proceeding to foreclose the Subordinate Mortgage.

**2.12 Permitted Leasing; Assignment of and Compliance with Leases.** Notwithstanding Section 3.12 below, Borrower shall have the right to enter into Leases in the ordinary course of Borrower's business without Lender's prior written consent, provided that all of the following conditions are satisfied with respect to any such Lease or modification thereto: (a) the term of such Lease, including any extension or renewal options, does not exceed a total of five (5) years; (b) the form used for such Lease represents a commercially reasonable lease form or has been approved in writing by Lender prior to Borrower's execution of the Lease; (c) such Lease is unconditionally subordinate to this Mortgage and contains an attornment provision consistent with Section 2.13 below; (d) no Event of Default has occurred and is continuing at the time of Borrower's execution of such Lease; (e) Borrower provides Lender with an accurate and complete copy of such Lease within ten (10) business days after such Lease is executed by Borrower; (f) Borrower does not collect rent for more than one (1) month in advance; and (g) Borrower does not in any other manner impair Lender's rights with respect to or interest in the Rents and Profits. Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender an absolute and unconditional assignment acceptable to Lender of all of Borrower's interest in all Leases and all guaranties of and security for the Tenants' respective obligations under the Leases. Borrower shall perform and discharge all obligations of the lessor under the Leases in accordance with the terms thereof and shall diligently enforce all remedies available to Borrower in a commercially reasonable manner in the event of a default by the Tenant under any Lease.

**2.13 Attornment at Lender's Option.** Each Tenant who enters into a Lease for the Property after the date of recordation of this Mortgage (each such Lease is referred to as a "Subordinate Lease") and who has not entered into a written non-disturbance and attornment agreement with Lender shall be deemed to have agreed to attorn to Lender and accept Lender as the landlord under its Lease on the terms of this Section. If Lender acquires title to the Property by judicial or nonjudicial foreclosure under this Mortgage or by deed in lieu of foreclosure under this Mortgage, Lender, at its option, shall have the right to require any or all Tenants under Subordinate Leases to attorn to and accept Lender as the landlord under such Tenant's Subordinate Lease (the "Attornment Option") by giving written notice to such Tenant within thirty (30) days after the date on which Lender acquires title to the Property (the "Acquisition Date"). If Lender exercises the Attornment Option with respect to any Subordinate Lease, such attornment shall be effective and self-operative as of the Acquisition Date without the execution of any further documents on the part of the Tenant, Lender, or any other party, and the Tenant under the Subordinate Lease shall be bound to Lender under all of the terms, covenants, and conditions of the Subordinate Lease for the remaining balance of the term thereof, with the same force and effect as if Lender were the landlord under such Lease. Whether or not Lender exercises its Attornment Option with respect to any Subordinate Lease, Lender (a) shall not be liable for any act or omission of any prior landlord under any Subordinate Lease, including

REDACTED

8

REDACTED



Borrower; (b) shall not be subject to any offset, defense, or claim which any Tenant may have against any prior landlord under any Subordinate Lease, including Borrower; (c) shall not be obligated (i) to return any security deposit now or hereafter paid by any Tenant; (ii) to return any prepaid rent or other amounts prepaid by any Tenant; or (iii) to grant any Tenant a credit for any such security deposit, prepaid rent or other prepaid amounts (excluding monthly rent and other charges which have not been prepaid for more than one month in advance), except to the extent, if any, that Lender has actually and unconditionally received such security deposit, prepaid rent or other prepaid amounts; and (d) shall not be obligated to complete the construction of any or all Improvements. Without limiting the terms of this Section, upon Lender's request, each Tenant under a Subordinate Lease shall execute and deliver to Lender any document which Lender determines to be necessary or appropriate to evidence such Tenant's attornment to Lender on the terms of this Section, including a new lease with Lender on the same terms and conditions as the Subordinate Lease for a term equal to the unexpired term of the Subordinate Lease. Nothing contained in this Section shall be deemed to obligate Lender to recognize any Subordinate Lease or accept an attornment by any Tenant upon Lender's acquisition of title to the Property. If Lender elects not to exercise the Attornment Option within the time period specified in this Section with respect to any Subordinate Lease, such Subordinate Lease and all of the rights, privileges and powers of the Tenant thereunder shall automatically terminate and shall be of no further force or effect from and after the Acquisition Date.

**2.14 No Liability by Lender.** Nothing contained in this Mortgage shall be deemed to obligate Lender to prosecute or enforce any or all of the Claims nor shall Lender have any liability or responsibility for any failure or delay by Lender in prosecuting or enforcing any or all of the Claims or to collect any or all of the Proceeds. Borrower shall at all times have the right to determine and follow its own policies and practices in the conduct of its business, subject to the terms and conditions of the Loan Documents.

**2.15 Application of Proceeds.** Lender, at its option, shall have the right (a) to apply any or all Proceeds received by Lender to any or all of the Obligations in such order and manner as Lender shall determine, whether or not such Obligations are then due and payable and without regard to the adequacy or impairment of the security for the Obligations; (b) to release any or all of the Proceeds received by Lender for payment of the costs of repair or reconstruction of the Property on such terms and conditions as may be acceptable to Lender; or (c) to release any or all of the Proceeds received by Lender to Borrower on such terms and conditions as may be acceptable to Lender. To the extent it is determined that Lender has applied payments in any order prohibited by any Governmental Authority, Lender shall refund to Borrower any fees and/or interest associated with the misapplication of payments. Acceptance of such refund by Borrower shall be deemed sufficient remedy and Borrower will have no right to seek further claims or damages from Lender.

**2.16 Release of Proceeds for Reconstruction.** Without limiting the generality of Section 2.15 above, if Lender elects to release any Proceeds for repair or reconstruction of the Property, at Lender's option, such release shall be conditioned on Borrower's satisfaction of the following conditions within one hundred and twenty (120) days after the occurrence of the damage requiring the repair or reconstruction: (a) Borrower's deposit with Lender of such funds in addition to the Proceeds as Lender determines to be necessary to pay all direct and indirect costs relating to the repair or reconstruction of the Property; (b) the establishment of a procedure acceptable to Lender for Lender's disbursement of the Proceeds; (c) Lender's receipt and approval of final plans and specifications and a cost breakdown for the repair or reconstruction of the Property; (d) Lender's receipt and approval of (i) a general construction contract for the repair or reconstruction of the Property executed by Borrower and a contractor acceptable to Lender; and (ii) payment and performance bonds written on such general contractor issued by a surety acceptable to Lender; (e) evidence acceptable to Lender that (i) the repair and reconstruction of the Property can be completed and a final and unconditional certificate of occupancy for the Property can be issued not later than thirty (30) days before the maturity date of the Note; (ii) upon completion of the repair or reconstruction of the Property, the income from the Property will be sufficient to pay all Impositions, operating expenses of the Property and installment payments due in connection with the Loan; (iii) leases acceptable to Lender will be in effect or remain in effect upon completion of the repair or reconstruction of the Property; (iv) upon completion of the repair or reconstruction of the Property, the fair market value of the Property will be at least as great as it was prior to the date on which the damage or condemnation occurred as shown in an appraisal acceptable to Lender; (v) there has been no

REDACTED

REDACTED



adverse change in the financial condition of Borrower or any Guarantors since the date of this Mortgage; and (vi) no Event of Default exists; and (f) such additional conditions as Lender may establish.

**2.17     Taxes and Impositions.**  Borrower (a) shall pay all Taxes at least ten (10) days before delinquency; and (b) shall pay all other Impositions when due. Upon Lender's request, Borrower shall deliver to Lender receipts and such other substantiating documentation as may be required by Lender to evidence payment of all Impositions by Borrower in accordance with this Section.

**2.18     Absolute Assignment of Rents and Profits.**

**(a)     Absolute Assignment.**  Borrower absolutely, irrevocably and unconditionally grants, transfers and assigns to Lender all Rents and Profits. Prior to the occurrence of an Event of Default, Borrower shall have a license to collect and retain on the terms of this Section 2.18 all Rents and Profits as they become due and payable. Upon the occurrence of an Event of Default, Borrower's license to collect the Rents and Profits shall automatically be revoked without notice to Borrower. Following such revocation, Lender shall be entitled to collect and retain all Rents and Profits, whether or not Lender has taken possession of the Property, and Borrower shall immediately pay, deliver or cause to be delivered to Lender any Rents and Profits then held or thereafter collected by Borrower. All Rents and Profits collected by or on behalf of Lender may be applied by Lender to the Obligations in such order and amounts as Lender may determine. If Lender elects to seek the appointment of a receiver following the occurrence of an Event of Default, Borrower irrevocably and unconditionally consents to the appointment of a receiver without regard to the adequacy of the security for any of the Obligations. Notwithstanding anything to the contrary contained in this Mortgage, the assignment of Rents and Profits contained in this Section is an absolute assignment and not an assignment as security. Neither the assignment of Rents and Profits contained in this Section nor any action taken by Lender to collect the Rents and Profits shall be deemed to make Lender a mortgagee-in-possession of the Property or shall be deemed to render Lender directly or indirectly liable or responsible for (i) the use, control, condition, care, operation, occupancy, management, repair, or leasing of the Property; (ii) the production of Rents and Profits from the Property; or (iii) to the extent permitted under applicable law, the performance or observance of any or all of Borrower's duties, obligations, representations, or warranties under any Leases or other agreements relating to the Rents and Profits. Lender shall have no responsibility or liability of any kind for any failure or delay by Lender in enforcing any of the terms or conditions of this Section 2.18.

**(b)     Applications of Rents and Profits Prior to Revocation of License.**  Borrower shall apply the Rents and Profits to the payment of all reasonable and necessary operating costs and expenses of the Property, installment payments due in connection with the Loan, payment of Impositions, and a reasonable reserve for future reasonable and necessary expenses, repairs and replacements relating to the Property before using the Rents and Profits for any other purpose which does not directly benefit the Property.

**(c)     Notices to Tenants.**  Upon revocation of the license described in Section 2.18(a) above, Borrower irrevocably authorizes and directs all Tenants under the Leases to comply with any notice or demand by Lender for payment to Lender of any Rents and Profits or for the performance of any of the Tenant's other respective obligations under the Leases, regardless of any conflicting demand by Borrower or notice by Borrower to any Tenant that Lender's demand is invalid or wrongful. No Tenant shall have any duty to inquire as to whether any default by Borrower has occurred under the Loan Documents in connection with any notice or demand by Lender under this Section.

**2.19     Request for Lender's Consent to Transfers.**  All requests by Borrower for Lender's consent to transfers under Section 3.12 below (a) shall specifically describe the transaction with respect to which Lender's consent is requested; (b) shall be delivered to Lender not less than fifteen (15) days before Borrower proposes to take the action with respect to which Lender's consent is requested; and (c) shall be accompanied by complete and accurate copies of all documents relating to the transaction with respect to which Lender's consent is requested, including financial statements and other information regarding the proposed transferee. Borrower acknowledges and agrees that Lender's right to withhold its consent, in its sole and absolute discretion, to any or all of the events

REDACTED

10

REDACTED



described in Section 3.12 below is based, in part, on the fact that Borrower's particular financial condition, credit history, character, experience, ability and expertise, as represented by Borrower to Lender, were material and important factors in Lender's decision to make the Loan, and that Lender will continue to rely on such matters to insure satisfactory compliance with the Loan Documents during the entire term of the Loan. If Lender, in its sole and absolute discretion, consents to any of the transfers described in Section 3.12 below, such consent shall not be deemed to release Borrower or any other Person liable for payment or performance of the Obligations, and Borrower and such Persons shall continue to remain liable for payment and performance of the Obligations in accordance with the terms of the Loan Documents, unless expressly released pursuant to a further written agreement signed by Lender.

    **2.20**    **Fixtures.**  Notwithstanding Section 3.12 below, Borrower may from time to time replace any Fixtures constituting a part of the Property in the ordinary course of Borrower's business, provided that (a) the replacement property for such Fixtures is at least equivalent in value, character, and quality to the Fixtures being replaced; (b) Borrower has good and marketable title to such replacement property free and clear of all liens, claims, and interests other than the lien of this Mortgage; and (c) this Mortgage shall constitute a first lien on such replacement Property.

    **2.21**    **Notice of Certain Matters.**  Borrower shall promptly notify Lender in writing of (i) any claim, demand, right, or Lien relating to the Property which may be adverse to the lien of this Mortgage; (ii) any material loss, depreciation, or adverse change in the value of the Property and any other occurrence which may materially and adversely affect Lender's lien on the Property; (iii) any material adverse change in Borrower's ability to perform any or all of the Obligations; (iv) any event or condition which constitutes an Event of Default; and (v) any dispute between Borrower and any Governmental Authority relating to the Property which may have a material adverse effect on the Property.

    **2.22**    **Inspection.**  Lender shall have the right at all reasonable times (a) upon reasonable prior written or telephonic notice (except that no such notice shall be required in the case of an emergency or any inspection limited to the public areas or common areas of the Property) to enter upon and inspect the Property, including any entry which Lender determines is necessary or appropriate in connection with enforcing or exercising any right, remedy or power available to or conferred on Lender under the Loan Documents; (b) to contact any Person to verify any information provided or disclosed by Borrower to Lender; and (c) to release such information regarding the Property, Borrower, or the Obligations as Lender may determine to be necessary or appropriate in connection with enforcing or exercising any right, remedy or power available to or conferred on Lender under the Loan Documents. Lender shall have no obligation or duty to inspect the Property, and all such inspections by Lender shall be for Lender's sole benefit and not for the benefit of Borrower or any other Person.

    **2.23**    **Defense of Actions and Protection of Security by Borrower.**  Borrower shall appear in and defend any action or proceeding commenced by any Person other than Lender which affects or which Lender determines may affect any or all of the following: (a) the Property; (b) the Insurance Claims, Condemnation Claims, or Property Claims; (c) Lender's or Borrower's respective rights and obligations under the Loan Documents; (d) the Obligations; or (e) any other transaction or matter which affects Lender by reason of its interest in the Property. Borrower shall promptly commence and diligently prosecute all actions and proceedings which are necessary or appropriate or which Lender determines may be necessary or appropriate to do any or all of the following: (i) prevent any damage, destruction, or injury to the Property; (ii) enforce or recover upon the Insurance Claims, Condemnation Claims or Property Claims or collect the Insurance Proceeds, Condemnation Proceeds, or Property Proceeds; or (iii) to preserve, protect, maintain, and defend the Property and Lender's lien thereon.

    **2.24**    **Enforcement of Covenants and Restrictions.**  If any of the Covenants and Restrictions apply to Persons owning or occupying real property which is adjacent to or in the vicinity of the Property, Borrower shall diligently enforce the Covenants and Restrictions against such Persons if (a) such Persons have breached their obligations under the Covenants and Restrictions; and (b) such breach has not been cured by such Persons within ninety (90) days after a request by Lender to Borrower to enforce the Covenants and Restrictions.

# REDACTED

11

REDACTED



**2.25    Further Assurances.** Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender such further documents and agreements and take such further actions as Lender may reasonably require from time to time to effectuate or carry out the purposes of the Loan Documents or to evidence, perfect, maintain, preserve or protect Lender's lien on the Property, including Borrower's execution of security agreements, assignments, financing statements, and continuation financing statements. Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender an assignment acceptable to Lender of such additional rights, privileges, Governmental Permits, and documents relating to the Property as Lender may reasonably determine to be necessary or appropriate in connection with the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property.

## ARTICLE 3

### EVENTS OF DEFAULT

Lender, at its option, shall have the right to declare Borrower to be in default under this Mortgage and the other Loan Documents upon the occurrence of any or all of the following events:

**3.1    Payment of Note and Other Monetary Obligations Under Loan Documents.** If (a) an Event of Default occurs under the terms of the Note; or (b) Borrower fails perform any of its other obligations under the Loan Documents or under any other document with Lender requiring the payment of money to Lender or any third Person within ten (10) days after the date on which such indebtedness or monetary obligation is due.

**3.2    Performance of Non-Monetary Obligations Under Loan Documents.** If Borrower breaches or otherwise fails to perform any of its non-monetary obligations to Lender or any third Person under any of the Loan Documents or under any other document with Lender when due.

**3.3    Misrepresentation.** If any request, statement, information, certification, or representation, whether written or oral, submitted or made by Borrower to Lender in connection with the Loan is false or misleading in any material respect.

**3.4    Insolvency of Borrower.** If (a) a petition is filed by or against Borrower under the federal bankruptcy laws or any other applicable federal or state bankruptcy, insolvency or similar law; (b) a receiver, liquidator, trustee, custodian, sequestrator, or other similar official is appointed to take possession of Borrower or the Property, or Borrower consents to such appointment; (c) Borrower makes an assignment for the benefit of creditors; provided, however, that Borrower shall have thirty (30) days within which to cause any involuntary bankruptcy proceeding to be dismissed or the involuntary appointment of any receiver, liquidator, trustee, custodian, or sequestrator to be discharged. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure provisions contained in the Loan Documents.

**3.5    Performance of Obligations to Senior Lien Holders or Third Persons.** If (i) Borrower fails to pay any of its indebtedness or to perform any of its obligations under any agreement between Borrower and any other Person who holds a Lien senior to this Mortgage when due; or (ii) Borrower fails to pay any of its indebtedness or to perform any of its obligations when due under any other material document between Borrower and any other Person.

**3.6    Attachment.** If all or any material part of the assets of Borrower or Guarantor are attached, seized, subjected to a writ or levied upon by any court process and Borrower fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

**3.7    Injunctions.** If a court order is entered against Borrower enjoining the conduct of all or part of its business and Borrower fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60)

REDACTED

12

REDACTED



days after such order is entered. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

3.8 **Dissolution.** The dissolution, liquidation, or termination of existence of Borrower or any of Borrower's General Partners or Managers.

3.9 **Impairment of Priority.** If (i) the priority of this Mortgage or Lender's security interest under any of the other agreements securing any or all of the Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a result of any intentional tortious act or omission by Borrower.

3.10 **Condemnation.** If all or any material part of the Property is transferred to any Governmental Authority as a result of any condemnation proceeding or action with respect to all or any material part of the Property.

3.11 **Failure to Repair Casualty.** If there is an uninsured casualty with respect to the Property and Borrower (a) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage; or (b) thereafter fails to diligently prosecute such repairs and reconstruction to completion.

3.12 **Sales, Transfers and Further Encumbrances.** If any one of the following events occurs without Lender's prior written consent, which may be withheld in Lender's sole and absolute discretion:

(a) the sale, conveyance, transfer, mortgage, encumbrance, lease (except for the leasing of space in the Improvements which is permitted under Section 2.12 of this Mortgage), or alienation of all or any part of the Property or any interest in the Property, whether voluntary or involuntary, or Borrower's grant of any option or agreement to effect any such transaction.

(b) if Borrower or any General Partner or Manager of Borrower is a partnership, the admission, withdrawal, retirement or removal of any General Partner of Borrower or any of Borrower's General Partners or Managers, or the sale or transfer of more than forty-nine percent (49%) of the beneficial interests in Borrower or any of Borrower's General Partners or Managers.

(c) if Borrower or any General Partner or Manager of Borrower is a corporation, the sale or transfer of an aggregate of more than forty-nine percent (49%) of any class of stock in such corporation or the issuance by such corporation of additional stock to any Person who is not a shareholder in such corporation as of the date of this Mortgage.

(d) if Borrower or any General Partner or Manager of Borrower is a limited liability company, the appointment, withdrawal, retirement or removal of any Manager of Borrower or any of Borrower's General Partners or Managers or the sale or transfer of more than forty-nine percent (49%) of the beneficial interests in Borrower or any of Borrower's General Partners or Managers.

(e) if Borrower or any General Partner or Manager of Borrower is an individual, the death or incompetency of such Person, except where applicable law limits or prohibits Lender's declaration of a default based on such occurrences; provided, however, that Lender shall not declare an Event of Default to exist based solely on the death or mental incompetence of any individual Borrower, General Partner, or Manager if, within ninety (90) days after the occurrence of such event, a substitute is appointed, and Lender determines that the financial condition, credit history, character, experience, ability and expertise of such substitute is otherwise acceptable.

3.13 **Default by Guarantor.** If Guarantor fails to pay any of its indebtedness or perform any of its obligations under the Guaranty when due or the revocation, limitation or termination or attempted revocation, limitation or termination of any of the obligations of Guarantor under the Guaranty, except in accordance with the express written terms of the Guaranty.

REDACTED

13

REDACTED

**3.14** **Misrepresentation by Guarantor.** If any request, statement, information, certification, or representation, whether written or oral, submitted or made by Guarantor to Lender in connection with the Loan or any other extension of credit by Lender to Borrower or such Guarantor is false or misleading in any material respect.

**3.15** **Cross-Default.** If Borrower fails to pay any of its indebtedness or to perform any of its obligations as to any other loan or loans or any other obligation owed to Lender when due.

## ARTICLE 4

### REMEDIES

Upon Lender's election to declare Borrower to be in default under this Mortgage and the other Loan Documents pursuant to Article 3 above, Borrower shall be deemed to be in default under this Mortgage and the other Loan Documents, and Lender shall have the following rights and remedies:

**4.1** **Actions by Lender.** Lender shall have the right (a) to enter, take possession of, and manage, operate and lease the Property; (b) to take possession of any or all Books and Records; (c) to collect any or all Rents and Profits, whether or not Lender has taken possession of the Property; and (d) to take any or all actions which Lender determines to be necessary or appropriate in connection therewith or to preserve, protect, maintain and defend the Property and Lender's lien thereon, including (i) the exercise and enforcement of all of Borrower's rights under any or all of the Leases; (ii) the termination, acceptance of a surrender, modification or amendment of any or all of the Leases; (iii) the execution of new Leases on such terms and conditions as Lender determines to be appropriate; and (iv) the repair, alteration, improvement or completion of the Property in such manner and to such extent as Lender determines to be necessary or appropriate. If Lender elects to take possession of the Property or to take any or all of the other actions described in this Section by court process, Borrower irrevocably and unconditionally agrees that a receiver may be appointed by a court for such purpose pursuant to Section 4.5 below.

**4.2** **Judicial Action.** Lender shall have the right to commence an action or proceeding to foreclose this Mortgage and to enforce any or all of the terms of the Loan Documents, including specific performance of the covenants of Borrower under this Mortgage.

**4.3** **Foreclosure by Power of Sale.**

(a) **Declaration and Notice of Default.** Lender shall have the right (i) to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law; and (ii) to deliver to Borrower a written notice of default and election to cause the Property to be sold. Upon the expiration of such period of time after delivery of such notice of default and election to sell and the giving of such notice of sale as may then be required by law, and without the necessity of any demand on Borrower, Lender or any designated sheriff or clerk, at the time and place specified in the notice of sale, shall sell the Property at public auction to the highest bidder for cash in U.S. Dollars payable at the time of sale. Lender or any obligee, creditor, or the holder or holders of the Note or Loan Documents may bid and purchase at such sale.

(b) **Postponements; Multiple Parcels.** To the extent permitted by law, Lender may, from time to time, postpone any sale hereunder by public announcement at the time and place noticed for such sale or may, in its discretion, give a new notice of sale. If the Property consists of several lots, parcels or items of property, Lender shall have the exclusive right (i) to designate the order in which such lots, parcels or items shall be offered for sale or sold; and (ii) to elect to sell such lots, parcels or items through a single sale, through two or more successive sales, or in any other manner Lender determines to be in its best interest. Any Person, including Borrower and Lender, may purchase at any sale under this Mortgage, and Lender shall have the right to purchase at any such sale by crediting upon the bid price the amount of all or any part of the Obligations. If Lender determines to sell the Property in more than one sale, Lender may, at its option, cause such sales of the Property to be conducted simultaneously or successively, on the same day or on such different days or times and in such order as Lender may

REDACTED

14

REDACTED



determine, and no such sale shall terminate or otherwise affect the lien of this Mortgage on any part of the Property that has not been sold until all Obligations have been paid in full.

(c)  **Costs of Sale; Incomplete, Defective or Irregular Sales.**  Borrower shall pay all costs, fees, and expenses of all sales of the Property under this Mortgage, including the costs, fees, and expenses (including attorneys' fees) of Lender, together with interest thereon at the interest rate applicable to principal under the Note.  A sale of less than all of the Property or any defective or irregular sale under this Mortgage shall not exhaust, impair or otherwise affect the power of sale contained in this Mortgage, and subsequent sales of the Property may be made under this Mortgage until all Obligations have been satisfied or until the entire Property has been sold without defect or irregularity. .

4.4  **Application of Sale Proceeds.**  Lender shall apply the proceeds of the sale or sales in the following order of priority: (a) first, to payment of all expenses of such sale or sales and all costs, expenses, fees, and liabilities of Lender, including attorneys' fees, costs of other evidence of title, ; (b) second, to all amounts advanced by Lender under any of the terms of this Mortgage which have not then been repaid, together with interest thereon at the rate applicable to principal under the Note; (c) third, to the payment of all other Obligations in such order and amounts as Lender determines; and (d) the remainder, if any, to the Person or Persons legally entitled thereto.

4.5  **Appointment of a Receiver.**  Lender shall have the absolute and unconditional right to apply to any court having jurisdiction and obtain the appointment of a receiver or receivers of the Property, and Borrower irrevocably and unconditionally consents to such appointment and agrees that Lender shall have the right to obtain such appointment (a) without notice to Borrower or any other Person; (b) without regard to the value of the Property or any other collateral securing the Obligations; and (c) without acceleration of the Obligations or commencement of foreclosure proceedings under this Mortgage. Any such receiver or receivers shall have the usual powers and duties of receivers in similar cases and all powers and duties necessary or appropriate to exercise the rights of Lender as provided in this Mortgage.

4.6  **Protection of Lender's Security.**  Lender, without obligation to do so and without notice to or demand on Borrower, and without releasing Borrower from any of its Obligations or waiving Lender's rights under the Loan Documents, shall have the right to perform any Obligation which Borrower has breached in such manner, at such time, and to such extent as Lender determines to be necessary or appropriate to preserve, protect, maintain and defend the Property and Lender's lien thereon.

4.7  **Assembly of Property.**  Upon Lender's request, Borrower shall assemble and make available to Lender at the location of the Land all Property which has been removed from or which is not located on the Land.

4.8  **Rescission of Notice of Default.**  Prior to the conduct of any sale under the power of sale contained in this Mortgage, Lender, at its option, shall have the right to rescind any notice of default and election to sell the Property. Lender's rescission of any notice of default and election to sell pursuant to this Section or under applicable law shall not constitute or be construed as a waiver of any Event of Default or impair, prejudice or otherwise affect (a) Lender's right to record a new notice of default and election to sell the Property based on the same or any other Event of Default; or (b) Lender's rights and remedies in connection with the Obligations.

4.9  **Exercise of Rights Under Other Loan Documents.**  Lender shall have the right to exercise any or all rights and remedies which Lender may have under any or all of the other Loan Documents and applicable law.

## ARTICLE 5

### WARRANTIES AND REPRESENTATIONS

5.1  **Warranties and Representations.**  As a material inducement to Lender's extension of credit to Borrower in connection with the Loan, Borrower warrants and represents to Lender as follows:

REDACTED

15

REDACTED



(a) **Litigation.** To the best of Borrower's knowledge, there are no actions, suits, proceedings or investigations pending or threatened against or affecting Borrower or the Property in any court or before any other Governmental Authorities, nor does Borrower know of any basis for any such action, suit, proceeding or investigation.

(b) **Ownership.** Upon recordation of this Mortgage, Borrower will be the sole legal and beneficial owner of, and will have good and marketable title to, the Property and all other collateral which is the subject of the Loan Documents.

(c) **Liens.** To the best of Borrower's knowledge, there are no Liens, claims, encroachments, Covenants and Restrictions, Leases, Easements, or other rights affecting the Property which would not be disclosed by a customary search of the records relating to the Land of the county recorder for the county in which the Property is located, except for such matters as have been specifically disclosed by Borrower to and approved in writing by Lender prior to the date of recordation of this Mortgage.

(d) **Condemnation.** To the best of Borrower's knowledge, there is no condemnation, zoning change, or other proceeding or action pending, threatened or contemplated by any Governmental Authority which would in any way affect the Property.

**5.2 Continuing Warranties and Representations.** The warranties and representations contained in this Article 5 shall be true and correct as of the date of recordation of this Mortgage, shall survive the closing of the Loan, and shall remain true and correct as of the date on which such warranties and representations are given.

## ARTICLE 6

### MISCELLANEOUS

**6.1 Lender Statement; Certain Charges.** With respect to (a) any statement, accounting, or similar information requested by Borrower or any other Person; or (b) any other document furnished to Borrower or any other Person by Lender at Borrower's request, Lender shall have the right to charge the maximum amount then permitted by law or, if there is no such maximum, Lender's customary charge for providing such statement, accounting, or other information. Borrower shall pay Lender its customary charge for any other service rendered by Lender in connection with the Loan or the Property, including the issuance of a request for full or partial reconveyance of this Mortgage, transmitting Loan proceeds to an escrow holder and changing Lender's records relating to the Obligations.

**6.2 Execution of Instruments by Lender.** Without notice to or affecting the liability of Borrower or any other Person for the payment or performance of the Obligations, without affecting the lien or priority of this Mortgage or Lender's rights and remedies under the Loan Documents, and without liability to Borrower or any other Person, Lender shall have the right, at any time and from time to time, to do any one or more of the following: (a) release any part of the Property from the lien of this Mortgage; (b) consent in writing to the making of any map or plat relating to the Property; (c) join in or consent to the granting of any Easement affecting the Property; and (d) execute any extension agreement relating to any or all of the Obligations, any document subordinating the lien of this Mortgage to any other Lien or document, or any other document relating to the Property, Obligations, or Loan Documents.

**6.3 Late Charges.** If any installment payment under the Note is not paid when due, Borrower shall pay any late charge provided for in the Note.

**6.4 Requests by Borrower for Approvals by Lender.** All requests by Borrower for Lender's consent to or approval of any transaction or matter requiring Lender's consent or approval under the Loan Documents (a) shall be made by Borrower in writing (inclusive of electronic delivery); (b) shall specifically describe the transaction or matter with respect to which Lender's consent or approval is requested; (c) shall be accompanied

REDACTED

16

REDACTED



by such information and documentation as Lender may require in connection with such request; and (d) shall be delivered to Lender not less than fifteen (15) days before Borrower proposes to take the action or effect the transaction with respect to which Lender's consent or approval is requested, unless a different period of time is expressly provided for in the Loan Documents.

**6.5    Approvals by Lender.**  Whenever (a) the terms of the Loan Documents grant Lender the right to consent to or approve any transaction or matter; (b) Lender is authorized or empowered under the Loan Documents to make a determination with respect to any transaction or matter; or (c) the Loan Documents provide that any document or other item must be approved by or acceptable to Lender, then except as otherwise expressly provided in the Loan Documents, (i) Lender shall have the right to grant or withhold such approval or consent and make such determination in its sole and absolute discretion; and (ii) the form and substance of such document or other item must be satisfactory to Lender in its sole and absolute discretion.  Whenever the terms of the Loan Documents require Lender's consent to or approval of any transaction, matter, or document, such consent or approval shall not be deemed to be effective unless it is set forth in a written instrument executed by Lender.

**6.6    Transfers by Borrower Without Lender's Consent; No Release of Borrower.**  The following provisions shall apply if Borrower sells the Property to a third Person either (i) without Lender's consent; or (ii) with Lender's consent in a transaction in which Borrower is not released from liability under the Loan Documents:

**(a)    No Release of Borrower.**  No such action by Borrower nor any assumption of any or all of the Obligations by any transferee of the Property ("Transferee") shall be deemed to release Borrower or any other Person, including Guarantor, from any liability under the terms of the Loan Documents, and Borrower and such Persons shall remain liable to Lender for the payment and performance of all of their respective obligations under the Loan Documents.

**(b)    Actions Without Borrower's Consent.**  Borrower agrees that Lender may do any one or all of the following without notice to or the consent of Borrower and without affecting Lender's rights or remedies against Borrower: (i) accelerate, accept partial payment of, compromise, settle, renew, extend the time for payment or performance of, or refuse to enforce any of Borrower's Obligations to Lender under or in connection with this Mortgage or any of the other Loan Documents; (ii) grant any indulgence or forbearance to the Transferee or any other Person under or in connection with any or all of the Loan Documents; (iii) release, waive, substitute or add any or all collateral securing payment of any or all of the Obligations; (iv) release, substitute or add any one or more endorsers or guarantors of any or all of the Obligations; (v) amend, supplement, alter or change in any respect whatsoever any term or provision of the Loan Documents or any other agreement relating to the Obligations; and (vi) exercise any right or remedy with respect to the Obligations or any collateral securing the Obligations, notwithstanding any effect on or impairment of Borrower's subrogation, reimbursement or other rights against the Transferee.

**(c)    Waivers.**  Borrower waives all rights which it may have (i) to require Lender to exhaust its rights and remedies against the Transferee, any other Person, or any collateral securing any or all of the Obligations before pursuing its rights and remedies against Borrower; (ii) to require Lender to exercise any right or power or to pursue any remedy which Lender may have under the Loan Documents or applicable law before pursuing its rights and remedies against Borrower; and (iii) to assert any defense to Lender's enforcement of its rights and remedies against Borrower based on an election of remedies by Lender or the manner in which Lender exercises any remedy which destroys, diminishes or interferes with any or all of Borrower's subrogation, reimbursement or other rights against the Transferee.

**6.7    Defense of Actions and Protection of Security by Lender.**  Whether or not an Event of Default has occurred, Lender shall have the right, but not the obligation, to appear in and defend any action or proceeding, whether commenced by or against Borrower, any of the Guarantors, or any other Person, which affects or which Lender determines may affect any or all of the following: (a) the Property; (b) the Insurance Claims, Condemnation Claims, or Property Claims; (c) Lender's, or Borrower's respective rights and obligations under the Loan Documents; (d) the Obligations; or (e) any other transaction or matter which affects Lender by reason of its interest

REDACTED

17

REDACTED



in the Property. Lender shall have the right, but not the obligation, to commence and prosecute any action or proceeding which Lender determines to be necessary or appropriate to do any or all of the following: (i) prevent any damage, destruction, or injury to the Property; (ii) enforce or recover upon the Insurance Claims, Condemnation Claims, or Property Claims or collect the Insurance Proceeds, Condemnation Proceeds, or Property Proceeds pursuant to this Mortgage; (iii) preserve, protect, maintain, and defend the Property and Lender's lien thereon; or (iv) enforce or exercise any right, remedy or power available to or conferred on Lender under the Loan Documents or applicable law. Lender shall have the right to discontinue, suspend or dismiss any such action or proceeding which has been commenced by Lender at any time.

**6.8     Expenses.** Lender shall have the right to incur and pay all costs, fees, expenses, and liabilities that Lender determines to be necessary or appropriate in connection with any or all of the following matters (the "Reimbursable Costs"): (a) the exercise of any or all of Lender's rights and remedies under the Loan Documents, (b) the enforcement of any or all of the Obligations or any other obligation of any Person liable to Lender in connection with the Loan, whether or not any legal action or proceeding is commenced by Lender; (c) the preservation, protection, maintenance, or defense of the Property or Lender's lien thereon; (d) the sale or disposition of the Property or any other collateral securing any or all of the Obligations; (e) the defense of any action or proceeding commenced by Borrower or Guarantor; or (f) the commencement and prosecution of any action or proceeding by Lender with respect to any or all of the matters described in this Section or in Section 6.10 above, including an action for relief from any stay, injunction, or similar order or enactment arising under any federal or state bankruptcy, insolvency or similar law. Without limiting the terms of this Section, Lender shall have the right to do any or all of the following in connection with any of the matters described in this Section, and all costs, fees, expenses, and liabilities incurred or paid in connection therewith shall constitute Reimbursable Costs: (1) select, retain, and consult with attorneys, accountants, appraisers, contractors, brokers, architects, engineers and such other experts, consultants, advisors and third Persons as Lender determines to be necessary or appropriate; (2) settle, purchase, compromise or pay any or all claims, demands, and Liens; and (3) obtain title insurance coverage relating to the Property which Lender determines to be necessary or appropriate.

**6.9     Taxes Imposed on Lender.** If, after the date of this Mortgage, any Governmental Requirements are enacted for the purpose of taxing any lien on the Property or changing in any way the laws for the taxation of mortgages or debts secured by mortgages, so as to impose on Lender payment of all or part of any Taxes assessed against the Property, then prior to the due date of such Taxes, Borrower shall pay all such Taxes and agree to pay such Taxes when levied or assessed against the Property or Lender.

**6.10     Payment of Advances by Borrower.** All Reimbursable Costs and all other costs, fees, expenses and liabilities incurred or paid by Lender under any other provision of the Loan Documents or under applicable law in connection with the Obligations or the Property (a) shall be payable by Borrower to Lender on Lender's demand; (b) shall constitute additional indebtedness of Borrower to Lender; (c) shall be secured by this Mortgage; and (d) shall bear interest from the date of expenditure at the rate of interest applicable to principal under the Note. Nothing contained in this Mortgage shall be deemed to obligate Lender (i) to incur any costs, fees, expenses, or liabilities; (ii) to make any appearances in or defend any action or proceeding; or (iii) to commence or prosecute any action or proceeding relating to any matter.

**6.11     No Third Party Beneficiaries.** The Loan Documents are entered into for the sole protection and benefit of Lender and Borrower and their respective permitted successors and assigns. No other Person shall have any rights or causes of action under the Loan Documents.

**6.12     Notices.** All notices and demands by Lender to Borrower under this Mortgage and the other Loan Documents shall be in writing and shall be effective on the earliest of (a) personal delivery to Borrower; (b) electronic delivery to Borrower addressed to Borrower at the e-mail address set forth in this Mortgage (c) two (2) days after deposit in first-class or certified United States mail, postage prepaid, addressed to Borrower at the address set forth in this Mortgage; and (d) one (1) business day after deposit with a reputable nationally recognized overnight delivery service, delivery charges prepaid, addressed to Borrower at the address set forth in this Mortgage; provided, however, that notwithstanding anything to the contrary contained in this Section, service of any notice of



default or notice of sale provided or required by law shall, if mailed, be deemed effective on the date of mailing. All notices and demands by Borrower to Lender under this Mortgage shall be in writing and shall be effective on actual receipt by Lender at Lender's address set forth in this Mortgage; provided, however, that nonreceipt of any such notice or demand by Lender as a result of Lender's refusal to accept delivery or Lender's failure to notify Borrower of Lender's change of address shall be deemed receipt by Lender. Borrower's and Lender's respective addresses set forth in this Mortgage may be changed by written notice given to the other party in accordance with this Section. If Borrower consists of more than one Person, service of any notice or demand on any one of such Persons by Lender shall be effective service on Borrower for all purposes.

**6.13 Performance of Covenants.** Borrower shall perform and comply with all of its obligations under this Mortgage at Borrower's sole cost and expense.

**6.14 Severability; Savings Clause.** If any provision of the Loan Documents shall be held by any court of competent jurisdiction to be unlawful, voidable, void, or unenforceable for any reason, such provision shall be deemed to be severable from and shall in no way affect the validity or enforceability of the remaining provisions of the Loan Documents. Notwithstanding anything to the contrary contained in the Note or any of the other Loan Documents, the interest and other amounts paid or agreed to be paid to the Lender in consideration of the Loan evidenced by the Note (such interest and other amounts are referred to collectively as "Interest") shall not exceed the maximum rate permitted under applicable usury laws. If, for any reason, the Interest exceeds the maximum rate permitted under applicable usury laws, then (a) all excess Interest amounts previously collected by the Lender shall be credited against the principal balance of the Note or, at the Lender's option, to any other principal indebtedness of Borrower to Lender arising out of the Loan evidenced by the Note; (b) if the Note and all such other indebtedness have been paid in full, such excess amounts shall be refunded by the Lender to Borrower; and (c) the provisions of the Note shall automatically be deemed to be reformed and the amount of Interest payable hereunder shall automatically be deemed to be reduced, without the execution of any further documents by Borrower or Lender, so as to provide for the payment of Interest in an amount equal to, but not exceeding, the maximum rate permitted under applicable usury laws. All consideration paid to Lender which constitutes Interest under applicable usury laws shall be amortized, prorated, allocated, or otherwise apportioned throughout the term of the Note so that, to the extent possible, the rate of interest on the principal amount of the Note does not exceed the maximum rate permitted under applicable usury laws.

**6.15 Interpretation.** Whenever the context of the Loan Documents reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. For purposes of this Mortgage, all references to the Property or Improvements shall be deemed to refer to all or any part of the Property or Improvements, respectively. The headings to sections of this Mortgage are for convenient reference only, and they do not in any way define or limit any of the terms of this Mortgage and shall not be used in interpreting this Mortgage.

**6.16 Time of the Essence.** Time is of the essence in the performance of each provision of the Loan Documents by Borrower.

**6.17 Amendments.** The Loan Documents (excluding the Guaranty) may be modified only by written agreement signed by Lender and Borrower.

**6.18 Entire Agreement.** The Loan Documents contain the entire agreement concerning the subject matter of the Loan Documents and supersede all prior and contemporaneous negotiations, agreements, statements, understandings, terms, conditions, representations and warranties, whether oral or written, between Lender and Borrower concerning the Loan which are the subject matter of the Loan Documents.

**6.19 No Waiver by Lender.** No waiver by Lender of any of its rights or remedies in connection with the Obligations or of any of the terms or conditions of the Loan Documents shall be effective unless such waiver is in writing and signed by Lender. Without limiting the generality of this Section, (a) no delay or omission by Lender in exercising any of its rights or remedies in connection with the Obligations shall constitute or be construed as a

REDACTED

19

REDACTED



waiver of such rights or remedies; (b) no waiver by Lender of any default by Borrower under the Loan Documents or consent by Lender to any act or omission by Borrower shall constitute or be construed as a waiver of or consent to any other or subsequent default, act or omission by Borrower; (c) no acceptance by Lender of any late payment or late or defective performance of any of the Obligations by Borrower shall constitute a waiver by Lender of the right to require prompt payment and performance strictly in accordance with the Loan Documents with respect to any other payment or performance of any of the Obligations; (d) no acceptance by Lender of any payment or performance following any notice of default which has been given or recorded by Lender shall constitute a waiver of Lender's right to proceed with the exercise of its remedies with respect to any Obligations which have not been paid or performed in full; (e) no acceptance by Lender of any partial payment or performance shall constitute a waiver by Lender of any of its rights or remedies relating to any Obligations which have not been paid or performed in full; and (f) no application of Rents and Profits, Insurance Proceeds, Condemnation Proceeds or Property Proceeds to any of the Obligations shall constitute or be construed as a waiver by Lender or cure of any Event of Default or impair, prejudice, invalidate or otherwise affect any action by Lender in response to such default.

**6.20    Waivers by Borrower.**  Borrower waives presentment, demand for payment, protest, notice of demand, dishonor, protest and non-payment, and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of the Loan Documents. Borrower waives the right to assert any statute of limitations as a defense to the enforcement of any or all of the Loan Documents to the fullest extent permitted by law. Without limiting the generality of the immediately preceding sentence, in the event of Borrower's payment in partial satisfaction of any or all of the Obligations, Lender shall have the sole and exclusive right and authority to designate the portion of the Obligations that is to be satisfied.

**6.21    Waiver of Marshalling.**  Borrower and all Persons holding a Lien affecting the Property who have actual or constructive notice of this Mortgage waive (a) all rights to require marshalling of assets or liens in the event of Lender's exercise of any of its rights and remedies under this Mortgage, including any judicial or nonjudicial foreclosure sale of the Property; (b) all rights to require Lender to exhaust its rights and remedies against any other collateral securing any or all of the Obligations before pursuing its rights and remedies under this Mortgage; and (c) all rights to require Lender to exercise any other right or power or to pursue any other remedy which Lender may have under any document or applicable law before pursuing its rights and remedies under this Mortgage.

**6.22    Waiver of Subrogation.**  Borrower waives all rights to recover against Lender for any loss or damage incurred by Borrower from any cause which is insured under any of the Insurance Policies, except that the foregoing waiver of subrogation shall not be effective with respect to any Insurance Policy if the coverage under such policy would be materially reduced or impaired as a result of such waiver. Borrower shall use its best efforts to obtain Insurance Policies which permit the waiver of subrogation contained in this Section.

**6.23    Cumulative Remedies.**  No right or remedy of Lender under this Mortgage or the other Loan Documents shall be exclusive of any other right or remedy under the Loan Documents or to which Lender may be entitled. Lender's rights and remedies under the Loan Documents are cumulative and in addition to all other rights and remedies which Lender may have under any other document with Borrower and under applicable law. Lender shall have the right to exercise any one or more of its rights and remedies in connection with the Obligations at Lender's option and in its sole and absolute discretion, without notice to Borrower or any other Person (except as otherwise expressly required by law or under the Loan Documents), and in such order as Lender may determine in its sole and absolute discretion. If Lender holds any collateral in addition to the Property for any of the Obligations, Lender, at its option, shall have the right to pursue its rights or remedies with respect to such other collateral either before, contemporaneously with, or after Lender's exercise of its rights or remedies with respect to the Property. Upon the occurrence of an Event of Default, Lender, at its option, shall have the right to offset against any debt or monies due from Lender to Borrower against all or part of the Obligations.

**6.24    Subrogation to Lien Rights.**  If any or all of the proceeds of the Note are directly or indirectly used to pay any outstanding Lien against the Property, or if Lender pays or discharges any Lien pursuant to any of

**REDACTED**

20

**REDACTED**



the terms of the Loan Documents or under applicable law, Lender shall be subrogated to all rights and liens held by the holder of such Lien, regardless of whether such Lien is reconveyed.

**6.25    Joint and Several Liability.**   Each Person signing this Mortgage as Borrower shall be jointly and severally liable to Lender for the performance of Borrower's obligations under the Loan Documents. If Borrower consists of more than one Person, the occurrence of any Event of Default with respect to any one or more of such Persons shall constitute an Event of Default and entitle Lender to exercise its rights and remedies under Article 4 of this Mortgage.

**6.26    Sale of Loan Documents.**   Lender shall have the right to do any or all of the following at any time without prior notice to or the consent of Borrower or any other Person: (a) to sell, transfer, pledge or assign any or all of Loan Documents, or any or all servicing rights with respect thereto; (b) to sell, transfer, pledge or assign participations in the Loan Documents ("Participations"); and (c) to issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Lender is authorized to forward or disclose to each purchaser, transferee, assignee, servicer, participant, or investor in such Participations or Securities (collectively, the "Investor") or any Rating Agency rating such Securities, each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan and to Borrower or any Guarantor as Lender determines to be necessary or desirable. Upon Lender's request, Borrower shall reasonably cooperate with Lender in connection with any of the transactions contemplated by this Section. Notwithstanding anything to the contrary contained in this Mortgage or any of the other Loan Documents, from and after the date of any sale, transfer or assignment of the Note and other Loan Documents by Lender, the cross-default provision contained in Section 3.15 of this Mortgage shall terminate and shall be of no further force or effect.

**6.27    Applicable Law; Jurisdiction.**   The Loan Documents shall be governed by and construed in accordance with the laws of the state where the Property is located. Borrower consents to personal jurisdiction over Borrower by the courts of the State of California and agrees that service of process on Borrower may be effected by certified or registered mail, return receipt requested, directed to Borrower at its address shown in this Mortgage.

**6.28    Successors.**   Subject to the restrictions contained in the Loan Documents, the Loan Documents shall be binding upon and inure to the benefit of Lender and Borrower and their respective permitted successors and assigns.

**6.29    Power of Attorney.**   Borrower irrevocably appoints Lender, with full power of substitution, as Borrower's attorney-in-fact, coupled with an interest, with full power, in Lender's own name or in the name of Borrower to take any or all of the actions specified in Article 4 above with respect to the Property. Lender shall have the right to exercise the power of attorney granted in this Section directly or to delegate all or part of such power to one or more agents of Lender. Nothing contained in this Mortgage shall be construed to obligate Lender to act on behalf of Borrower as attorney-in-fact.

**6.30    Indemnification.**   Borrower shall indemnify and hold Lender and its officers, directors, agents, employees, representatives, shareholders, affiliates, successors and assigns (collectively, the "Indemnified Parties") harmless from and against any and all claims, demands, damages, liabilities, actions, causes of action, suits, costs, and expenses, including attorneys' fees and costs, arising directly or indirectly out of or relating to any or all of the following: (a) Borrower's breach of any of its Obligations or warranties under the Loan Documents; (b) any act or omission by Borrower; (c) any act or omission by a contractor, architect or any other Person providing labor, services, materials or equipment in connection with the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property; (d) Borrower's use and occupancy of the Property or any other activity or thing allowed or suffered by Borrower to be done on or about the Property; (e) any claims for commissions, finder's fees or brokerage fees arising out of the Loan or the transactions contemplated by the Loan Documents; and (f) Lender's exercise of any or all of Lender's rights or remedies under the Loan Documents in accordance with the terms thereof, except in the case of negligence or intentional tortious conduct of

**REDACTED**                                   21                                   **REDACTED**

such Indemnified Party which such Indemnified Party is determined by the final judgment of a court of competent jurisdiction to have committed.

   **6.31    State Specific Provisions.** State specific provisions are outlined on Exhibit B (if applicable), attached hereto and incorporated herein.

IN WITNESS WHEREOF, Borrower has caused this Mortgage to be executed as of the day and year first written above.

**BORROWER:**

Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company

Date

By: Scott A. Merritt, Managing Member

**NOTE: ALL SIGNATURES ON THIS MORTGAGE MUST BE NOTARIZED**

**REDACTED**                    22                    REDACTED



**ACKNOWLEDGMENT**     REDACTED

State of MI
County of Bay                    } SS.

On   2-27-15       before me,     **Debra K. Woody**       , personally
                                 (insert name and title of the officer)

appeared   Scott A. Merritt                          , who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of   MI       that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

[Notary Signature]

DEBRA K WOODY        (Seal)
Notary Public - Michigan
Bay County
My Commission Expires Jul 1, 2017
Acting in the County of _Bay_

REDACTED



Township of Williams, County of Bay, State of Michigan

Commencing at the Southeast corner of the East ½ of the East ½ of the Southwest ¼ of the Northwest ¼ of Section 22, Town 14 North, Range 3 East; thence West along the centerline of Midland Road, so-called, as now laid out, 50 feet to the Point of Beginning; thence North 200 feet; thence West 100 feet; thence South 200 feet; thence East along the centerline of Midland Road, 100 feet to the Point of Beginning, subject to a right-of-way for highway purposes over the South 50 feet thereof.

Parcel ID: 09-140-022-100-160-00

REDACTED

# CONSTRUCTION LOAN RIDER TO MORTGAGE

This Construction Loan Rider is attached to and made a part of the Mortgage dated __02-27-2015__ (this "**Mortgage**") executed by:

__Virtual Mortgage Solutions LLC, A Michigan Limited Liability Company__ ("**Borrower**"), for the benefit of **LendingHome Funding Corporation**, a Delaware corporation ("**Lender**"), and encumbering the property described in the Mortgage.

WHEREAS, Borrower desires to finance the construction of certain improvements to the Property and Borrower and Lender desire to establish certain terms and conditions relating to the advance of proceeds of the Construction Loan for such construction.

WHEREAS, all references to the word "Loan" in this Mortgage should include this Construction Loan.

NOW, THEREFORE, for valuable consideration, the Mortgage is amended by adding the following Article 7:

## ARTICLE 7

### CONSTRUCTION PROVISIONS

**7.1** **Additional Definitions.** For purposes of this Mortgage, the following terms shall have the following definitions:

(a) **Completion Date.** "Completion Date" means the date by which Borrower shall complete construction of the Project which must occur within sixty (60) days after the Initial Advance.

(b) **Construction Contract.** "Construction Contract" means the general construction contract or contracts between Borrower and the Contractor, which have been submitted to and approved by Lender.

(c) **Contractor.** "Contractor" means the general contractor or contractors who have been retained by Borrower to construct the Project and approved by Lender.

(d) **Plans.** "Plans" means the final plans and specifications for the Project that have been submitted to and approved by Lender.

(e) **Project.** "Project" means the improvements that Borrower proposes to construct on the Land as described in the Plans.

(f) **Retention Amount.** "Retention Amount" means the greater of (i) ten percent (10%) of the amount of each Disbursement Request; and (ii) the retention amount (if any) set forth in the Construction Contract.

**REDACTED**                    **REDACTED**



**7.2**   **Advances of Construction Loan Proceeds.** Lender agrees to advance Construction Loan proceeds to Borrower during the period from the date of recordation of this Mortgage up to but not including the Construction Termination Date (as defined in the Note) in the aggregate principal amount not to exceed at any time outstanding the amount of the Construction Loan under the following terms and conditions:

(a)   **Use of Construction Loan Proceeds.** All Construction Loan proceeds received by Borrower shall be held in trust and shall be applied solely for the purposes for which such proceeds have been advanced under the Loan Documents. Lender shall have no obligation to monitor or verify the use or application of any Construction Loan proceeds advanced by Lender.

(b)   **Disbursement Requests.** From time to time during the course of construction of the Project, but no more frequently than once per week, Borrower or Contractor shall submit to Lender an itemized statement (the **"Disbursement Request"**) showing the cost of those items of labor, services, materials, and equipment that have been performed on or incorporated in, or delivered to the Project together with, if applicable, the pro rata portion of any contractor's fee, overhead, or general conditions attributable to such labor, services, materials, and equipment. Each Disbursement Request (i) shall be satisfactory to Lender in form and substance; (ii) shall be signed and certified as being true and correct by Borrower; (iii) shall be signed and certified as being true and correct by the contractor who is responsible for completing the work identified in the Disbursement Request; (iv) shall be accompanied by a true and correct copy of the bills and invoices which are the subject of the Disbursement Request (collectively, the **"Invoices"**); (v) shall be accompanied by the names of all parties who are to be paid in whole or in part with the proceeds of such Disbursement Request (the **"Claimants"**); (vi) shall be accompanied by recorded video evidence substantiating the work performed; (vii) shall be accompanied by a conditional waiver and release upon progress payment in the form required by the laws of the state in which the Property is located executed by each Claimant; and (viii) shall be accompanied by such title insurance endorsements or other information as may be required by Lender to insure the first priority of this Mortgage insofar as it secures such advance. All of the items and documentation required to accompany each Disbursement Request shall be considered a part of such Disbursement Request.

(c)   **Disbursements.** Lender shall advance funds directly to the Contractor for payment of the amounts shown in the approved Disbursement Request less the Retention Amount upon Lender's verification of the accuracy of each Disbursement Request based on Lender's inspection of the Project and/or Lender's review of the substantiating documentation.

(d)   **Borrower Certification.** With respect to each Disbursement Request that Borrower submits, Borrower shall be deemed conclusively to have certified to Lender that (i) the items of labor, services, materials, and equipment shown in the Disbursement Request have been performed on, supplied to, or installed in the Project in conformance with the Plans and all Governmental Permits; and (ii) all funds advanced to or for the benefit of Borrower by Lender in connection with the Disbursement Request shall be applied to pay for the cost of those items of labor, services, materials, and equipment shown in the Disbursement Request. Borrower shall be deemed to have made the certification described in this Section with respect to each Disbursement Request received by Lender, notwithstanding Borrower's failure to sign such Disbursement Request.

(e)   **Reliance by Lender.** Lender may conclusively presume that all Disbursement Requests, statements, information, certifications, and representations, whether written, oral or electronic, submitted or made by Borrower, Contractor, or any of other parties involved in the Project, or any of their respective agents, to Lender in connection with the Construction Loan are true and correct, and Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by Lender, in advancing the Construction Loan proceeds and taking or refraining from taking any other action in connection with the Construction Loan.

REDACTED                   REDACTED

2



(f) **Release of Retention Amount.** Lender shall advance the Retention Amount upon Lender's receipt and approval of the following, if specifically requested by Lender: (i) a permanent and unconditional certificate of occupancy for the Project issued by the appropriate Governmental Authority; (ii) accurate as-built plans and specifications for the Project; (iii) evidence that the Project has been completed in accordance with the Plans and all other requirements of the Loan Documents; (iv) waivers of lien executed by each Claimants who may file a lien against the Property in connection with the Project in the form required by the laws of the state in which the Property is located; and (iv) such other assurances as may be necessary to satisfy the requirements of Lender's title insurer with respect to the issuance of the rewrite ALTA lender's policy of title insurance to Lender.

**7.3     Construction Covenants.** Borrower covenants and agrees to comply with each of the following terms and conditions:

(a)     **Approval of Plans, Permits and Notices.**     Borrower shall deliver to Lender for Lender's approval complete and accurate copies of the following documents upon Borrower's receipt thereof: (i) Plans and any material modifications thereto; (ii) Construction Contracts and any material modifications thereto; (iii) Governmental Permits related to the Project; (iv) and all material notices, requests, and demands received by Borrower from any Governmental Authority, architect, contractor, subcontractor or engineer related to the Project.

(b)     **Commencement of Construction.**     After recordation of this Mortgage and Lender's approval of the Plans and other documents described in Section 8.3(a), Borrower shall commence construction of the Project and shall thereafter diligently prosecute construction in a good and workmanlike manner in accordance with the Plans.  For the avoidance of doubt, Borrower shall not commence any construction activity prior to the date of recordation of this Mortgage which may result in any mechanic's lien or similar lien gaining priority over the lien of this Mortgage, unless arrangements acceptable to Lender have been made by Borrower for the issuance of a title insurance policy to Lender which satisfies the requirements of this Mortgage.

(c)     **Completion of Construction.**  Borrower shall complete construction of the Project on or before the Completion Date.  For purposes of this Section, the Project shall be deemed to be completed when (i) the appropriate Governmental Authorities have issued a final and unconditional certificate of occupancy for the Project, together with all other Governmental Permits which may be required in order to allow occupancy of the Project; (ii) the Project and all other improvements have been completed in accordance with the Plans; (iii) all utility services for the Project have been completed and are in full operation; and (iv) the conditions for the release of the Retention Amount in Section 8.2(f) have been satisfied.

(d)     **Notice of Completion.**  Borrower shall sign and record a notice of completion for the Project in the office of the county recorder for the county in which the Property is located as soon as permitted under applicable law.  Upon Lender's request, Borrower (i) shall sign and record a notice of cessation of labor and such other similar notices or documents as Lender may reasonably require to protect its interest in connection with the Construction Loan; and (ii) shall provide Lender with a copy of all notices recorded pursuant to this Section certified by the county recorder.

**7.4     Inspection.**  Lender shall have the right at all times to enter upon and inspect the Property, or designate an agent to do the same, and to contact any Person supplying labor, materials, services, or equipment to the Property to verify information disclosed by Borrower or the Contractor to Lender, to obtain information relating to the Property, or for any other purpose relating to the Construction Loan, and Borrower authorizes each such Person to provide such information to Lender.

REDACTED

3

REDACTED

**7.5**    **Right to Stop Work.** If Lender determines that any portion of the Project does not conform in any material respect to the Plans or the requirements of the Construction Loan Documents, Lender shall have the right (a) to require Borrower and the Contractor to stop work on such portion of the Project and to correct the non-conforming matter as soon as reasonably practicable; and (b) to withhold any or all further advances relating to such portion of the Project until the matter has been corrected. No such action by Lender shall affect Borrower's obligation to complete the Project on or before the Completion Date. Borrower, at its expense, shall take all actions which may be reasonably necessary to correct any non-conforming matter within the time period reasonably specified by Lender or, if no time period is specified, as soon as reasonably practicable.

**7.6**    **Lien Claims; Stop Notices.** Borrower shall promptly pay and discharge all claims and liens for labor, services, materials and equipment furnished in connection with the development of the Property. Lender shall have the right to withhold Construction Loan proceeds pursuant to any stop notice or bonded stop notice that is served on Lender in connection with the Construction Loan. Within ten (10) days after service of any such stop notice on Lender or the recordation of any mechanic's lien or other similar lien against the Property, Borrower (a) shall cause the claim evidenced by the stop notice or lien to be paid in full out of Borrower's own funds and not out of the Construction Loan proceeds and thereby cause such stop notice or lien to be released and discharged; (b) shall deliver to Lender or record, as appropriate, a surety bond complying with all applicable Governmental Requirements which is sufficient to release such stop notice or lien; or (c) shall make such other arrangements as may be acceptable to Lender for the payment of the claim evidenced by the stop notice or lien and the protection of Lender and the Property from the effect of the stop notice or lien.

**7.7**    **Compliance with Applicable Laws.** Borrower shall at all times comply with and keep in effect all Governmental Permits. Borrower shall at all times cause the Property to comply with (a) all Governmental Requirements; (b) all requirements and orders of all judicial authorities which have jurisdiction over the Property; and (c) all covenants, conditions, restrictions and other matters of record affecting the Property.

**7.8**    **Additional Insurance.** In addition to the insurance requirements set forth in Section 2.3 of this Mortgage, Borrower at its expense shall at all times maintain in full force builder's all-risk insurance covering the Project and all materials stored on the Property, together with such endorsements as Lender may require, including vandalism, malicious mischief, earthquake, and flood coverage, and such other types of insurance as may from time to time be required by Lender.

**7.9**    **Cooperation.** Borrower shall at all times cooperate with Lender in order to ensure that the Property is developed in accordance with the requirements of the Loan Documents. Upon Lender's request, Borrower (a) shall execute such further documents and instruments and perform such further acts as may be required by Lender to carry out the terms and conditions of the Loan Documents; and (b) shall assign to Lender as additional collateral for the Construction Loan such further rights, privileges, permits, licenses, approvals, contracts, agreements, reports, and other documents relating to the Property as Lender may require.

**7.10**    **No Duty to Inspect.** Lender shall have no obligation to supervise or inspect the Project or to examine any of Borrower's or Contractor's books and records relating to the Property. All such inspections and examinations by Lender, including Lender's review and approval of the Plans or Construction Contract shall be for Lender's sole benefit and not for the benefit of Borrower. No inspection of the Project by Lender shall constitute or be construed as a representation or determination by Lender that the Project complies with the Plans or that the Project is or will be free from defective work or materials.

**7.11**    **No Liability of Lender.** Borrower shall have the sole responsibility for all aspects of Borrower's business and the development of the Property, including (a) the quality, suitability and adequacy of the Plans; (b) the

REDACTED

REDACTED

4



inspection and supervision of construction of the Project; (c) the qualifications, financial condition and performance of all architects, engineers, contractors, subcontractors, material suppliers, consultants, sureties, bonding companies, property managers and other Persons supplying labor, materials, services, or equipment to the Property; (d) the accuracy of all applications for advances of the Construction Loan proceeds; (e) the proper application of all Construction Loan advances; (f) the suitability, adequacy, enforceability, and validity of the Construction Contracts; (g) the conformance of the Project with the Plans and the existence or non-existence of any defective work or materials in the Project; and (h) the legitimacy of any party making a Disbursement Request on Borrower or Contractor's behalf. Borrower agrees that Lender shall not be directly or indirectly liable or responsible in any way or under any circumstances to Borrower or any other Person for any or all of the matters described in parts (a) through (h) of this Section, and Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective workmanship or materials in connection with the construction of the Project.

    **7.12**   **Relationship of Parties.**   Nothing contained in the Loan Documents or the transactions contemplated by the Loan Documents shall (a) constitute or be construed as the formation of a partnership or joint venture between Lender and Borrower or any Person; or (b) constitute or be construed as the creation of any confidential or fiduciary relationship of any kind between Lender and Borrower or any other Person; or (c) result in Lender being deemed to be a manager, controlling person, or other business associate or participant of any kind in the conduct of Borrower's business or affairs, including the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property.

IN WITNESS WHEREOF, Borrower has caused this Construction Loan Rider to be executed as of the day and year first written above.

**BORROWER:**

Virtual Mortgage Solutions, LLC, A Michigan Limited Liability Company

*[signature]*      Date 2/27/16

By: Scott A. Merritt, Managing Member

REDACTED           REDACTED



## MORTGAGE

### EXHIBIT "B"

## MICHIGAN SPECIFIC PROVISIONS

NOTICE: THIS INSTRUMENT IS A FUTURE ADVANCE MORTGAGE UNDER PUBLIC ACT 348 OF MICHIGAN PUBLIC ACTS OF 1990, AS AMENDED. ALL FUTURE ADVANCES UNDER THE LOAN DOCUMENTS SHALL HAVE THE SAME PRIORITY AS IF THE FUTURE ADVANCE WAS MADE ON THE DATE THAT THIS MORTGAGE WAS RECORDED. THIS MORTGAGE SHALL SECURE ALL INDEBTEDNESS OF THE BORROWER, ITS SUCCESSORS AND ASSIGNS UNDER THE LOAN DOCUMENTS, WHENEVER INCURRED.

Section 6.31.1 Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Section 6.31 and the other provisions of this Mortgage, the terms and conditions of this Section 6.31 shall control and be binding.

Section 6.31.2 Waste. The Borrower's failure to pay any insurance premium upon policies covering any of the Property or failure to pay any taxes or assessments, or both, assessed against the Property, or any installments thereof, before any interest or penalty for nonpayment attaches thereto, shall constitute waste as provided in Michigan Compiled Laws 600.2927 as amended; and the Borrower agrees to and hereby does consent to the appointment of a receiver under said statute, with such powers as the court making such appointment shall confer, should the Mortgagee elect to resort to its remedies thereunder. Payment by the Lender for and on behalf of the Borrower of any such delinquent tax, assessment or insurance premium, properly payable by Borrower under the terms of this Mortgage, shall not cure the default herein described nor shall it in any manner impair the Lender's right to the appointment of a receiver on account thereof.

Section 6.31.3 Assignment of Rents and Leases. The Assignment under Section 2.18 of the Mortgage shall include an assignment, pursuant to Michigan Compiled Laws 565.81 et seq. and Michigan Compiled Laws 554.231 et seq., each as amended, and security interest in, any and all Leases, and all rents, issues, income and profits derived from the use of the Property or any portion thereof, whether due or to become due, (including, if applicable, all revenues, rentals, rent equivalents, receipts, income and profits from guest rooms, meeting rooms, food and beverage facilities, vending machines, telephone systems, guest laundry and any other items of revenue, receipts and/or income as identified in the Uniform System of Accounts for the Lodging Industry, 9th Edition, Hospitality Financial and Technology Professionals (1996), as from time to time amended). These assignments shall run with the land and shall be good and valid against Borrower and all persons claiming by, under, or through Borrower from the date of recording of this Mortgage and shall continue to be operative during foreclosure or any other proceedings taken to enforce this Mortgage. If any foreclosure sale results in a deficiency, the assignments shall continue as security during the foreclosure redemption period.

Section 6.31.4 Foreclosure; Expense of Litigation. If an Event of Default, shall occur under the Obligations, Lender may, at its option, declare the whole of the Obligations to be immediately due and payable and Lender shall have the right to foreclose this Mortgage and sell the Property at public auction or venue pursuant to Michigan Compiled Laws 600.3201 et seq. or judicially foreclose this Mortgage under the provisions of Michigan Compiled Laws 600.3101 et seq., and/or exercise any right, power or remedy provided in this Mortgage or any of the other Loan Documents in accordance with Michigan Compiled Laws 600.3201 et seq. or Michigan Compiled Laws 600.3101 et seq. (as may be amended from time to time, collectively, the "Act"). In the event of a foreclosure sale, Lender is hereby authorized, without the consent of the Borrower, to assign any and all insurance policies to the purchaser at such sale or to take such other steps as Lender may deem advisable to cause the interest of such purchaser to be protected by any of such insurance policies.

(a)     Borrower agrees to pay all of Lender's costs and expenses, including reasonable attorney fees, which shall be added to the Obligations secured by this Mortgage. At any foreclosure sale held under the foregoing

REDACTED                                    REDACTED



Michigan statutes, Borrower agrees that in its foreclosure sale bid price Lender shall be allowed to deduct from the appraised value of the Property: (i) a brokerage commission of not more than ten percent (10%) of the Property value; (ii) the unpaid balance of any mortgage or other liens which have priority over the lien of this Mortgage; and (iii) the sum of all unpaid property taxes and assessments and insurance premiums due and to become due on the Property through the date upon which the foreclosure redemption period shall expire. Any foreclosure sale may, at the sole option of Lender, be made en masse or in parcels, any law to the contrary notwithstanding, and Borrower hereby knowingly, voluntarily and intelligently waives any right to require any such foreclosure sale to be made in parcels or any right to select which parcels shall be sold. The proceeds of any foreclosure sale shall be applied, as the Bank elects, to the payment of Lender's collection and other expenses, including reasonable attorney fees, and/or payment of the Obligations, with the surplus, if any, to Borrower or Borrower's successor in interest. Commencement of proceedings to foreclose this Mortgage in any manner authorized by law shall be deemed an exercise of the Lender's option to accelerate the Obligations. After the date upon which the maturity of the Obligations secured by this Mortgage has been accelerated, Lender acceptance of any amount(s) paid by Borrower less than the full unpaid principal balance of the Obligations plus accrued interest, late charges and Lender's costs and expenses in this Mortgage described, shall not waive the default or acceleration, but shall only be credited upon the unpaid balance of the Obligations unless Lender specifically agrees in writing to waive any such default and/or acceleration.

THIS MORTGAGE CONTAINS A POWER OF SALE AND UPON DEFAULT MAY BE FORECLOSED BY ADVERTISEMENT. IN A FORECLOSURE BY ADVERTISEMENT, NO HEARING IS INVOLVED AND THE ONLY NOTICE REQUIRED IS PUBLICATION OF A FORECLOSURE NOTICE IN A LOCAL NEWSPAPER AND POSTING A COPY OF THE NOTICE UPON THE PROPERTY. IF THIS MORTGAGE IS FORECLOSED BY ADVERTISEMENT UNDER THE PROVISIONS OF MICHIGAN COMPILED LAWS 600.3201 ET SEQ., BORROWER HEREBY KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY WAIVES ALL RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE STATE OF MICHIGAN AND THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA TO ANY NOTICE OR HEARING IN CONNECTION WITH A FORECLOSURE BY ADVERTISEMENT EXCEPT AS SET FORTH IN THE MICHIGAN STATUTE.

(b)     Lender may procure mortgage foreclosure or title reports. Borrower covenants to pay forthwith to Lender all sums paid for such purposes with interest at the highest rate applicable to the Obligations, and such sums and the interest thereon shall constitute a further lien upon the Property. Lender may also procure appraisals, environmental audits and such other investigations or analyses of the Property as Lender may determine to be required by regulatory or accounting rules, procedures or practices or to otherwise be prudent or necessary. Borrower shall grant Lender free and unrestricted access to the Property for such purposes. Borrower covenants to pay forthwith to Lender all sums paid for such purposes with interest at the highest rate applicable to the Obligations, and such sums and the interest thereon shall constitute a further lien upon the Property.

**Section 6.31.5     Construction Mortgage.** The following provision shall be added to the Construction Rider (if applicable): this Mortgage is a "Construction Mortgage" under the Michigan Uniform Commercial Code to the extent that it secures an obligation incurred for the construction of certain improvements to the Land.

**Section 6.31.6     Applicable Law; Jurisdiction.** Section 6.27 of the Mortgage is deleted in its entirety and replaced with the following:

"The Loan Documents shall be governed by and construed in accordance with the laws of the state of California without regard to and choice of law provisions. All payments made pursuant to the Loan Documents are to be made to the Lender in California in which state the last act occurred to make this Deed of Trust and the Loan Documents effective between the parties. The exercise of remedies against the Property or other collateral, shall be governed by the laws of the state of Michigan. Borrower consents to personal jurisdiction over Borrower by the courts of the State of California and agrees that service of process on Borrower may be effected by certified or registered mail, return receipt requested, directed to Borrower at its address shown in this Deed of Trust."

REDACTED                                    2                                    REDACTED

**Section 6.31.7** **Waiver of Dower and Homestead Rights.** If the Borrower is a married man, and the Property to be purchased with the proceeds of the Loan is to be owned solely in Borrower's name, then Borrower's spouse agrees to a waiver of any dower and homestead rights as follows: _____ not applicable _____.
(Borrower's spouse, if Section 6.31.7 applies) having been fully and completely informed of his/her rights in and to the Property, including any inchoate dower interest, homestead rights or other interests, hereby, as applicable, freely and voluntarily, waives, as to Lender:

(a)      any right of the undersigned to remain in any dwelling house located upon the Property without charge for one (1) year after the death of the Grantor as provided in 1978 Public Act 642, §288, as amended, (MCLA 700.288) or as such rights may be amended in the future.

(b)      any right of the undersigned to the use of one-third part of the Property for life as provided in Sections 1 to 29 of Chapter 66 of the Revised Statutes of 1846, as amended (MCLA 558.1 to 558.29) or as such may be amended in the future.

The undersigned understands, acknowledges and agrees that the estate of Borrower referred to in the Mortgage shall be liable for any and all mortgage payments due to Lender and in the event that such payments are not made to Lender as agreed, Lender shall have an unconditional right to foreclose the Mortgage without regard to the rights of the undersigned under 1978 Public Act 642, §288, as amended, (MCLA 700.288) or Sections 1 to 29 of Chapter 66 of the Revised Statutes of 1846, as amended, (MCLA 558.1 to 558.29) or as such rights may be amended in the future, all of which rights are hereby waived by the undersigned.

**This Waiver of Dower or Homestead Rights has been freely and voluntarily given to Lender by the undersigned without any duress or coercion whatsoever, and after the undersigned has consulted with legal counsel or has been given an opportunity to do so; and the undersigned acknowledges that he/she has carefully and completely read this Waiver of Dower or Homestead Rights and fully understands its meaning and effect.**

**BORROWER:**

Virtual Mortgage Solutions LLC, A Michigan, Limited Liability Company

_Scott A. Merritt_                Date _8/29/16_

By: Scott A. Merritt, Managing Member

**BORROWER'S SPOUSE** (if Section 6.31.7 applies):

_____N/A_____
Name

_____
Signature                                         Date

**REDACTED**                 3                 **REDACTED**

| Debtor 1 | Scott | | Merritt | |
| | First Name | Middle Name | Last Name | |

| Debtor 2 | | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |

United States Bankruptcy Court for the: Eastern District of Michigan

Case number  16-20691-dob

☑ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.** 1378 W. Midland Rd.
Street address, if available, or other description

| Auburn | MI | 48611 |
| City | State | ZIP Code |

Bay
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: 140-022-100-160-00

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| $ 40,200.00 | $ 0.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Member of Owner of Record

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.** 221 Church St.
Street address, if available, or other description

| Auburn | MI | 48611 |
| City | State | ZIP Code |

Bay
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: 150-P05-000-039-00

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| $ 71,400.00 | $ 0.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

Member of Owner of Record

☐ Check if this is community property (see instructions)

EXHIBIT B

| Debtor 1 | Scott | | | Merritt | Case number (if known) 16-20691-dob |
| | First Name | Middle Name | Last Name | |

**1.3.**

_____
Street address, if available, or other description

_____

_____
City          State      ZIP Code

_____
County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| $_____ | $_____ |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ **Check if this is community property** (see instructions)

2  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. ......................................................→   | $_____0.00 |

---

**Part 2:  Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.  **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

**3.1.**
| Make: | Lincoln |
| Model: | MKX |
| Year: | 2008 |
| Approximate mileage: | 144000 |

Other information:
_____

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| $  2,500.00 | $  2,500.00 |

If you own or have more than one, describe here:

**3.2.**
| Make: | Ford |
| Model: | Escape |
| Year: | 2013 |
| Approximate mileage: | _____ |

Other information:

Lease - To Be Surrendered

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
| $  7,700.00 | $  7,700.00 |

Official Form 106A/B                    Schedule A/B: Property                                                    page 2
16-20691-dob    Doc 17    Filed 04/25/16    Entered 04/25/16 15:46:31    Page 14 of 34

16-20691-dob    Doc 41    Filed 06/20/16    Entered 06/20/16 11:04:03    Page 53 of 65

3.3.  Make: _____
      Model: _____
      Year: _____
      Approximate mileage: _____
      Other information:
      [_____]

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

3.4.  Make: _____
      Model: _____
      Year: _____
      Approximate mileage: _____
      Other information:
      [_____]

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories
   ☑ No
   ☐ Yes

4.1.  Make: _____
      Model: _____
      Year: _____
      Other information:
      [_____]

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

If you own or have more than one, list here:

4.2.  Make: _____
      Model: _____
      Year: _____
      Other information:
      [_____]

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $_____ | $_____ |

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ..................................................➔

| |
|---|
| $ 10,200.00 |

## Part 3: Describe Your Personal and Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**

*Examples*: Major appliances, furniture, linens, china, kitchenware

☐ No

☑ Yes. Describe......... Household Goods - 3961 Holland Rd., Midland, MI 48642 ..................... $ 1,000.00

**7. Electronics**

*Examples*: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☑ No

☐ Yes. Describe.......... ..................... $

**8. Collectibles of value**

*Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No

☐ Yes. Describe.......... ..................... $

**9. Equipment for sports and hobbies**

*Examples*: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No

☐ Yes. Describe.......... ..................... $

**10. Firearms**

*Examples*: Pistols, rifles, shotguns, ammunition, and related equipment

☑ No

☐ Yes. Describe.......... ..................... $

**11. Clothes**

*Examples*: Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

☑ Yes. Describe.......... Men's Clothing - 3961 Holland Rd., Midland, MI 48642 ..................... $ 500.00

**12. Jewelry**

*Examples*: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☑ No

☐ Yes. Describe.......... ..................... $

**13. Non-farm animals**

*Examples*: Dogs, cats, birds, horses

☑ No

☐ Yes. Describe.......... ..................... $

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☑ No

☐ Yes. Give specific information. ............... ..................... $

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................................................→ $ 1,500.00

## Part 4: Describe Your Financial Assets

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

### 16. Cash

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No
☐ Yes............................................................................................................................... Cash: .................... $_____

### 17. Deposits of money

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes .....................

Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | First Merit Bank | $ 5.00 |
| 17.2. Checking account: | Chemical Bank | $ 5.00 |
| 17.3. Savings account: | Chemical Bank | $ 5.00 |
| 17.4. Savings account: | Wildfire Credit Union | $ 5.00 |
| 17.5. Certificates of deposit: | | $ |
| 17.6. Other financial account: | | $ |
| 17.7. Other financial account: | | $ |
| 17.8. Other financial account: | | $ |
| 17.9. Other financial account: | | $ |

### 18. Bonds, mutual funds, or publicly traded stocks

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.................

Institution or issuer name:

$_____
$_____
$_____

### 19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture

☐ No
☑ Yes. Give specific information about them.........................

| Name of entity: | % of ownership: | |
|---|---|---|
| Merritt Ventures, Inc. | 100% % | $ 0.00 |
| Merritt & Associates | 100% % | $ 0.00 |
| Virtual Mortgage Solutions, LLC | 100% % | $ 0.00 |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No

☐ Yes. Give specific    Issuer name:
   information about
   them.........................

   _____   $ _____
   _____   $ _____
   _____   $ _____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No

☐ Yes. List each
   account separately.   Type of account:   Institution name:

   401(k) or similar plan: _____   $ _____

   Pension plan: _____   $ _____

   IRA: _____   $ _____

   Retirement account: _____   $ _____

   Keogh: _____   $ _____

   Additional account: _____   $ _____

   Additional account: _____   $ _____

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No

☐ Yes.........................   Institution name or individual:

   Electric: _____   $ _____
   Gas: _____   $ _____
   Heating oil: _____   $ _____
   Security deposit on rental unit: _____   $ _____
   Prepaid rent: _____   $ _____
   Telephone: _____   $ _____
   Water: _____   $ _____
   Rented furniture: _____   $ _____
   Other: _____   $ _____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No

☐ Yes.........................   Issuer name and description:

   _____   $ _____
   _____   $ _____
   _____   $ _____

Official Form 106A/B
       16-20691-dob   Doc 17   Filed 04/25/16   Entered 04/25/16 15:46:31   Page 18 of 30   Schedule A/B: Property   page 6

   16-20691-dob   Doc 41   Filed 06/20/16   Entered 06/20/16 11:04:03   Page 57 of 65

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes .................................... Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

                                          $_____

                                          $_____

                                          $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

☐ Yes. Give specific
information about them....                                                 $_____

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples*: Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No

☐ Yes. Give specific
information about them....                                                 $_____

27. **Licenses, franchises, and other general intangibles**
*Examples*: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific
information about them...                                                 $_____

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

☑ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns
and the tax years. ....................... 

| | | |
|---|---|---|
| Federal: | $_____ |
| State: | $_____ |
| Local: | $_____ |

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No

☐ Yes. Give specific information............

| | |
|---|---|
| Alimony: | $_____ |
| Maintenance: | $_____ |
| Support: | $_____ |
| Divorce settlement: | $_____ |
| Property settlement: | $_____ |

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☑ No

☐ Yes. Give specific information..............                                                 $_____

**31. Interests in insurance policies**

*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

**32. Any interest in property that is due you from someone who has died**

If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No

☐ Yes. Give specific information.............

$

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim. ...................

$

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Describe each claim. .,..................

$

**35. Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information,..........

$

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** ....................................................................................................................➔ | $ 20.00 |

---

**Part 5:**   **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

☐ No. Go to Part 6.

☑ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☐ No

☑ Yes. Describe.......   Insurance renewal commissions. Sole source of monthly income currently.   $ 650.00

**39. Office equipment, furnishings, and supplies**

*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No

☐ Yes. Describe.......

$

Official Form 106A/B   16-20691-dob   Doc 17   Filed 04/25/16   Schedule A/B: Property   Entered 04/25/16 15:46:31   Page 20 of 34   page 8

16-20691-dob   Doc 41   Filed 06/20/16   Entered 06/20/16 11:04:03   Page 59 of 65

| Debtor 1 | Scott | | | Merritt | Case number (if known) | 16-20691-dob |
| --- | --- | --- | --- | --- | --- | --- |
| | First Name | Middle Name | Last Name | | | |

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No

☐ Yes. Describe.......

$_____

**41. Inventory**

☑ No

☐ Yes. Describe.......

$_____

**42. Interests in partnerships or joint ventures**

☑ No

☐ Yes. Describe.......   Name of entity:                                                    % of ownership:

| | % | $_____ |
| --- | --- | --- |
| | % | $_____ |
| | % | $_____ |

**43. Customer lists, mailing lists, or other compilations**

☐ No

☑ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

   ☐ No

   ☑ Yes. Describe........
   All information necessary to present for insurance purposes        $_____ **0.00**

**44. Any business-related property you did not already list**

☑ No

☐ Yes. Give specific
   information .........

$_____
$_____
$_____
$_____
$_____
$_____

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here** ..................................................................................................➔   $_____ **650.00**

**Part 6:**   **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in.**
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.

☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**47. Farm animals**
Examples: Livestock, poultry, farm-raised fish

☑ No

☐ Yes ........................

$_____

Official Form 106A/B           Schedule A/B: Property                                Page 21 of 34
16-20691-dob   Doc 17   Filed 04/25/16   Entered 04/25/16 15:46:31   Page 21 of 34

16-20691-dob   Doc 41   Filed 06/20/16   Entered 06/20/16 11:04:03   Page 60 of 65

48. Crops—either growing or harvested
   ☑ No
   ☐ Yes. Give specific
      information.............                                                                              $_____

49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade
   ☑ No
   ☐ Yes ..........................                                                                         $_____

50. Farm and fishing supplies, chemicals, and feed
   ☑ No
   ☐ Yes ............... ...........                                                                        $_____

51. Any farm- and commercial fishing-related property you did not already list
   ☑ No
   ☐ Yes. Give specific
      information.............                                                                              $_____

52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
   for Part 6. Write that number here ...................................................................➔  $        0.00

## Part 7: Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
   Examples: Season tickets, country club membership
   ☑ No
   ☐ Yes. Give specific                                                                                    $_____
      information.............                                                                              $_____
                                                                                                           $_____

54. Add the dollar value of all of your entries from Part 7. Write that number here ...........................➔  $        0.00

## Part 8: List the Totals of Each Part of this Form

55. Part 1: Total real estate, line 2 ................................................................................➔  $        0.00

56. Part 2: Total vehicles, line 5                              $    10,200.00

57. Part 3: Total personal and household items, line 15         $     1,500.00

58. Part 4: Total financial assets, line 36                     $        20.00

59. Part 5: Total business-related property, line 46            $       650.00

60. Part 6: Total farm- and fishing-related property, line 52   $         0.00

61. Part 7: Total other property not listed, line 54          + $         0.00

62. Total personal property. Add lines 56 through 61. ...............  $    12,370.00  Copy personal property total ➔ + $    12,370.00

63. Total of all property on Schedule A/B. Add line 55 + line 62..............................................................  $    12,370.00

Official Form 106A/B                      Schedule A/B: Property
         16-20691-dob    Doc 17    Filed 04/25/16    Entered 04/25/16 15:46:31      Page 22 of 34  page 10

   16-20691-dob    Doc 41    Filed 06/20/16    Entered 06/20/16 11:04:03    Page 61 of 65

| | |
|---|---|
| In re: | Case No.: 16-20691-dob |
| | Chapter 7 |
| SCOTT MERRITT, | |
| | Hon. Daniel S. Opperman.BayCity |
| Debtor. | |

<u>NOTICE AND OPPORTUNITY FOR HEARING</u>

Lending Home Funding Corporation, its assignees and/or successors in interest, has filed papers with the Court for relief for the Automatic Stay.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).

If you do not want the court to lift the Automatic Stay as to **1378 West Midland Road, Auburn, MI 48611**, or if you want the court to consider your views on the motion within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:

United States Bankruptcy Court, 111 First Street, Bay City, Michigan 48708

**Your response or answer must comply with F.R. Civ.P.8(b), (c) and (e).**

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

You must also mail a copy to:
  Thomas Beadle, Esq., at the address listed below;
  Daniel Himmelspach, Chapter 7 Trustee, 916 Washington Ave., Suite 305, Davidson Building, Bay City, MI 48708-5723

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Dated:  6/20/16

BEADLE SMITH, P.L.C.

By:  /s/ Thomas Beadle
    Thomas Beadle, Esquire
Retained Counsel for Creditor
445 South Livernois Road, Suite 305
Rochester Hills, Michigan 48307
(248) 650-6094
(248) 650-6095 fax
tbeadle@bbssplc.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

In re
SCOTT MERRITT,

        Debtor.

_____/

LENDING HOME FUNDING CORPORATION,
its assignees and/or successors in interest,

        Secured Creditor,

SCOTT MERRITT;
DANIEL HIMMELSPACH, Trustee,

        Respondents.

_____/

Bk. No. 16-20691-dob
Hon. Daniel S. Opperman
Chapter 7

## ORDER FOR RELIEF FROM AUTOMATIC STAY

It appearing that neither the Debtor nor the Chapter 7 Trustee has any opposition to Secured Creditor Lending Home Funding Corporation's Motion for Relief from Automatic Stay, and with good cause appearing therefor, the Court makes its Order as follows:

**IT IS HEREBY ORDERED** that the Automatic Stay in the above-entitled Bankruptcy proceeding is immediately vacated and extinguished for all purposes as to Secured Creditor, its assignees and/or successors in interest, and Secured Creditor, its assignees and/or successors in interest may proceed with foreclosure of the subject Property generally described as **1378 West Midland Road, Auburn, MI 48611**, pursuant to applicable statutory law, and thereafter commence any action necessary to obtain complete possession thereof.

**IT IS FURTHER ORDERED** that the approximate fair market value of the property is $40,200.00, and the Secured Creditor is owed $114,713.44 through May 18, 2016, including unpaid principal balance, late charges and fees.

**IT IS FURTHER ORDERED** that entry of this order shall be deemed to constitute relief from the automatic stay as to any interest the Chapter 7 Trustee may have in the subject Property.

**IT IS FURTHER ORDERED** that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

**IT IS FURTHER ORDERED** that any surplus on the foreclosure sale of this property shall be turned over to the estate and any deficiency on the foreclosure sale of this property shall be treated as an unsecured debt.

**IT IS FURTHER ORDERED** that, in addition to foreclosure, this Relief Order permits activity necessary to obtain possession of said collateral; therefore, Lending Home Funding Corporation is permitted to engage in loss mitigation activity, including short payoff, short sale and the obtaining of a deed-in-lieu of foreclosure including authorization to negotiate inferior liens. Lending Home Funding Corporation is further permitted to send information regarding these loss mitigation options directly to the debtor.

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

In re
SCOTT MERRITT,

      Debtor.

Bk. No. 16-20691-dob
Hon. Daniel S. Opperman
Chapter 7

_____/
LENDING HOME FUNDING CORPORATION,
its assignees and/or successors in interest,

      Secured Creditor,

SCOTT MERRITT;
DANIEL HIMMELSPACH, Trustee,

      Respondents.

_____/

CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016, I electronically filed the foregoing Paper(s) with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Daniel Himmelspach, Chapter 7 Trustee
Office of the U.S. Trustee


and I certify that I have mailed by United States Postal Service the Paper(s) to the following non-ECF participants:

Scott Merritt
2014 N Saginaw Road
Midland, MI 48640
Debtor In Pro Se

By: /s/ Thomas Beadle
THOMAS BEADLE, ESQUIRE (P39203)
Retained Counsel for Creditor,
Lending Home Funding Corporation, its
assignees and/or successors in interest
Beadle Smith, P.L.C.
445 South Livernois Road, Suite 305
Rochester Hills, Michigan 48307
(248) 650-6094
(248) 650-6095 fax
tbeadle@bbssplc.com
L.084-128
